NEWELL TAFT, Appellant, *v.* WILLIAM P. CHAPMAN et al., Respondents.

Defendants, stock brokers in New York, received from one Van A., residing at Lyons, orders by telegraph to buy 2,100 shares of Erie stock, he agreeing to send margin.  On the day of sending and receipt of telegrams defendants contracted for the stock ordered, to be delivered three days thereafter, at which time they were delivered to and paid for by defendants.  On the day of the sending of the telegrams, but whether before or after does not appear, Van A. stole $6,500 of U. S. coupon bonds belonging to plaintiff, which he forwarded to defendants as a "margin." The bonds were received by the defendants before the delivery of and payment for the stock.  In an action for the conversion of the stock,— *Held,* that defendants gave credit to the promise of Van A., and not to the bonds; that the receipt of the bonds and the fulfillment of the contract for the purchase of the stock after such receipt did not make them *bona fide* holders, and that they were therefore liable; also, that if defendants, after receipt of the bonds, purchased upon the credit thereof any stocks for Van A., they were entitled to hold them as security for any loss arising in that transaction, but the sale of bonds beyond the amount necessary for such indemnity was a conversion, for which an action would lie.

(Argued November 25, 1872; decided December 10, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department in favor of defendants, entered upon an order denying motion for a new trial and directing judgment upon a nonsuit.

This action was brought to recover the value of eight bonds (so called) of the United States government, of which five were for the sum of $1,000 dollars each, and three for the

sum of $500 dollars each. The bonds were coupon bonds, payable to bearer.

The plaintiff was the owner of the bonds, and deposited them for safe keeping in the P. R. Westfall Bank, of which Beardsley Van Alstine was the cashier. The defendants were stock brokers in the city of New York, and were correspondents of Van Alstine. He had been dealing in Erie stocks. On the 21st, day of February, 1868, Van Alstine sent the defendants a telegram in these words:

" To CHAPMAN & Co., 7 Wall street:

" Buy 800 at 71 or under, and 1,000 at 70½ or under. Send margin to-day in full.

"B. VAN ALSTINE."

This telegram was sent at 8.30 A. M., received at the New York office at 9 A. M., and by the defendants before the opening of the stock board, on the 21st. In answer, defendants sent a telegram advising Van Alstine that they had bought 300 at 70¼; that the market looked sick, and that they should not buy any more unless ordered. In answer to which Van Alstine telegraphed on 21st, "Buy as directed by me; it is all right." The defendants bought as directed, and telegraphed accordingly, and added: "Send margin to-day without fail." Thereupon Van Alstine telegraphed to defendants to buy still more stock, and added, "It is all right."

On the same day Van Alstine sent $5,000 in government bonds to the defendants by express, and on the next day he sent $3,000 more as collateral to his transactions with the defendants. Included in these were plaintiff's stocks which Van Alstine had abstracted from the bank. Under these orders the defendants, on the 21st of February, contracted to purchase stock for Van Alstine to the amount of 2,100 shares, which were to be delivered and paid for on the 24th.

The defendants received the collaterals sent by Van Alstine on the 24th before they paid for the stock. Evidence was given tending to show that, with these collaterals in their hands, defendants, on the 29th of February, purchased 400

shares more of stock for Van Alstine, and at his direction. The stocks were sold by Van Alstine's directions, at a loss more than sufficient to exhaust all of his collaterals in the defendants' hands. On the 16th of March the defendants sold out the last of the collaterals, leaving him in their debt $136.26.

The plaintiff demanded the bonds of the defendants on the 18th of March, 1868.

At the close of the evidence defendants' counsel moved for a nonsuit, which was granted.

*H. R. Selden* for the appellant. Respondents were not *bona fide* holders of the bonds as against the plaintiff. (*Markham* v. *Jaudon*, 41 N. Y., 235; see *Phillbrick* v. *Dallett*, 12 Abb. [N. S.], 419, 425, and cases there cited; *Brown* v. *Leavitt*, 31 N. Y., 113; *Day* v. *Saunders*, 37 How., 534; *Pratt* v. *Coman*, 37 N. Y., 440; *Swift* v. *Tyson*, 16 Pet., 1, 19, 20; 12 Abb. [N. S.], 424; *Stalker* v. *McDonald*, 6 Hill, 95; *Clark* v. *Ely*, 2 Sandf. Ch., 170; *Farrington* v. *Frankfort Bank*, 31 Barb., 188; *McBride* v. *Farmers' Bank*, 26 N. Y., 454; *Cardwell* v. *Hicks*, 37 Barb., 463; *Manhattan Co.* v. *Reynolds*, 2 Hill, 140; *Youngs* v. *Lee*, 2 Kern., 555; *Rosa* v. *Brotherson*, 10 Wend., 85; *Coddington* v. *Bay*, 20 John., 645, 646; per WOODWORTH, J., pp. 650, 651; per SPENCER, J., pp. 656, 657; *White* v. *Springfield Bank*, 3 Sandf. [S. C.] Rep., 226; *West* v. *Am. Exch. Bank*, 44 Barb., 175, 178; *Andrews* v. *Dietrich*, 14 Wend., 31, 36.) Defendants were not *bona fide* holders of the bonds by means of any obligation assumed on the credit of them, for they assumed none on that account. Payment for the stock after the receipt of the bonds did not constitute them *bona fide* holders. (20 John., 650, 657; 6 Hill, 96, 100; Add. on Cont., 22; *Hunt* v. *Bloomer*, 5 Duer, 202, 205; *Smith* v. *Bartholomew*, 1 Metcalf, 278; *Cumber* v. *Wane*, 1 Strange, 426; S. C., 1 Smith's Lead. Cas., 146; *Fitch* v. *Sutton*, 5 East., 230; *Collins* v. *Martin*, 1 Bos. & Pul., 51.)

*W. .F. Cogswell* for the respondents. Defendants were *bona fide* holders of the bonds, and acquired a good title as against the real owner. (*Murray* v. *Lardner*, 2 Wal., 110; *Fenby* v. *Pritchard*, 2 Sandf., 151; *White* v. *Springfield Bank*, 3 id., 222.)

ANDREWS, J. The defendants derived title to the bonds in question from Van Alstyne, who took them by larceny from the possession of the plaintiff, the true owner.

They were payable to bearer, and were not over due, and the title of the defendants is protected to the same extent as would be that of the endorsee of a bill or note, transferred under the same circumstances. (*Delafield* v. *The State of Illinois*, 2 Hill, 159; *Mercer County* v. *Hacket*, 1 Wallace, 95; *Murray* v. *Lardner*, 2 id., 110.)

The plaintiff's title was not lost by the transfer to the defendants, unless they were *bona fide* holders for value of the securities thus feloniously taken from his possession.

It was incumbent upon the defendants to show that they took the bonds upon some new consideration and incurred some obligation, or relinquished some existing right upon the credit of the bonds.

And if they had taken them as security for, or in nominal payment of an antecedent debt, they were not, within the decisions in this State, holders for value. (*Coddington* v. *Bay*, 20 Johns., 645; *Stalker* v. *McDonald*, 6 Hill, 93; *Barden* v. *Weaver*, 49 N. Y., 286.)

It is conceded that the defendants took the bonds from Van Alstyne in good faith, and the only question is whether they took or held them for value within the rule of law established in this State.

The defendants on the 21st of February, 1868, contracted to purchase 2,100 shares of "Erie" stock, which was deliverable to them upon their contract on the 24th of the same month.

This purchase was made, so far as it appears, in their own names, but for Van Alstyne, and in pursuance of his direc-

tions contained in telegrams sent to them on the day of the purchase, and in which he promised to send " margin " on the same day to secure them against losses by the deprecia- tion of the stock.

The stock so purchased by the defendants was delivered to and paid for by them on the 24th, and before such delivery and payment they received the bonds in question, which had been forwarded to them by express by Van Alstyne, part on the 21st and part on the 22d of the month.

The bonds were abstracted from the bank and taken by Van Alstyne on the 21st, but whether before or after the defendants contracted for the purchase of the stock, does not appear.

The defendants, by their contract of purchase, became bound to the vendors to pay purchase price upon delivery.

They stood in the relation of sureties as between themselves and Van Alstyne, and upon payment by them of the debt, could recover the amount paid from their principal. (*Mark- ham* v. *Jaudon*, 41 N. Y., 235 ; Story on Agency, § 335.) But as to the vendors they were bound, upon an original and independent contract, to pay the purchase-money.

· The defendants acquired no lien or right to the bonds in question by anything which occurred on the 21st of February.

It need not be denied that a court of equity may, under special circumstances, enforce the performance of a contract to give to a creditor or surety, a specific lien, or to transfer a specific security, when relying upon the contract a credit has been given or a liability has been assumed.

But it would not follow that this principle could be applied so as to compel the transfer of a negotiable instrument to which the debtor had no title when the contract was made, so as to make the assignee a holder for value and overreach the title of the true owner. But we are not called upon to consider this question. The promise contained in Van Alstyne's telegram of the 21st of February was to send " margin," and referred to no specific security. His engage- ment would have been satisfied by sending money or other

security usual in such cases. It does not appear that he had abstracted the bonds from the bank when the telegram was sent, and the defendants cannot be said to have relied upon the credit of these bonds or upon the expectation that they would receive them. They gave credit to the promise and not to the bonds, and if Van Alstyne had then owned them, the defendants could not have compelled him to transfer them. The subsequent receipt of the bonds, sent in fulfillment of the promise, did not strengthen the position of the defendants.

The reason upon which the title of a party is protected, to whom a negotiable instrument is passed in good faith and for value, although it was stolen or fraudulently put in circulation, is founded upon the possession of the instrument by the assignor, at the time of the transfer, and the implication of title arising therefrom, and the credit given upon the faith thereof. In this case the credit had been given before the receipt of the bonds. Nor did the performance by the defendants of their contract to pay for the stocks after the receipt of the bonds, make them holders for value. In making such payment, they simply performed their contract with their vendors. The obligation to make it existed before the bonds were received, and was not in any way induced or affected thereby.

By the payment Van Alstyne became their debtor, by reason of the implied promise upon which a principal is held liable to reimburse the agent for any payments or advances made in his behalf and under his authority. But the payment made by the defendants is to be referred to their contract, and not to any request, express or implied, made by Van Alstyne. The validity of their contract was assumed upon the trial. They recognized its validity by performing it, and there is no ground to infer that they performed it upon the credit of the bonds, or that they would have repudiated it, if they had not received them.

The defendants are entitled to be regarded as holders for value, in respect to any new transactions entered into, or any new liability incurred by them at the request of Van Alstyne, upon the credit of the bonds after the transfer to them.

And if the 400 shares of stock purchased for Van Alstyne on the 29th of February were bought by them upon the credit of the bonds, they were entitled to hold them as security for any loss arising in that transaction. But their lien was limited to the loss sustained, and the sale of the bonds beyond the amount necessary for such indemnity was a conversion for which an action can be maintained by the plaintiff. (*Waterbury* v. *Westervelt*, 5 Seld., 598 Addison on Torts, 311.)

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.