EFFINGHAM LAWRENCE, as Executor, etc., Respondent, v. CHARLES DEKAY TOWNSEND, Appellant.

L., a resident of Louisiana, died in that State in December, 1878, leaving a will which was there admitted to probate and which appointed plaintiff, his son, and J., his daughter, executors; both qualified. Said executors employed attorneys at Washington to collect a claim against the U. S. government, which was allowed. A draft of $1,700 was obtained, payable to the executors, not officially but individually, which was, by their consent, placed in the hands of defendant. The executors could not agree upon a division and plaintiff would not unite with J. in indorsing the draft for the purpose of a division in the manner she claimed. Defendant, an attorney, thereupon surrendered the draft to the government, receiving in its place another for the same amount, payable to the plaintiff and J. as executors. Defendant then procured the indorsement of J. upon the draft and collected the amount, placing the same in bank to his individual credit. In March, 1880, plaintiff presented the will for probate in the city of New York, letters testamentary thereon were issued to him as sole executor; and after demand this action was brought to recover the proceeds of the draft. Defendant claimed a lien upon the funds for his services in the exchange of the draft and the collection of the money; he alleged and proved that J., as executrix, agreed he should have such lien and be paid out of the proceeds. *Held*, that no lien was created for such services; that defendant's employment was not for any purpose of the estate, but for the individual benefit of J. solely; and that for such purpose she could not give him a lien on the draft or its proceeds.

Defendant also claimed a lien for services rendered under the following circumstances: At the time of his death, L. and one W. owned a plantation in Louisiana, as tenants in common. L. had executed to his five children a mortgage for $90,000 upon his interest, which was a first lien; he had subsequently executed to W. a mortgage for $60,000, to cover advances the latter had made or should make in carrying on the plantation. The said children had, by an agreement with W., postponed the lien of their mortgage to his. After the death of L., W. foreclosed his mortgage in Louisiana, and it was established in the foreclosure proceedings that there was due him about $38,000. The plantation was sold under the judgment, and W. became the purchaser for $39,000; a few days before the sale, the children agreed with W. to sell him their interest for $66,666, which sum he agreed to pay to them less the amount due on his mortgage. He rendered for this purpose an account to them. J. retained defendant to investigate W.'s accounts, and for his services and expenses he claimed a lien. *Held* untenable; that the retainer was in no way for the benefit of the estate; that J. had no authority to pledge the draft or its proceeds for such services, and that a transfer by her to

one having knowledge of the facts, as did the defendant, was invalid as against the estate.

It was admitted by plaintiff, that as to items of defendant's claim amounting to $14, the services were rendered for the estate, and defendant claimed that the action could not be sustained because no tender of that sum was made. *Held* untenable ; that while if the defendant still retained the draft, and the action had been to recover it or for its conversion, it might have been an answer to a demand that defendant had a lien thereon, he had by his own act lost such lien, and had no lien upon the money, but simply a right to retain or claim payment of the $14 out of it.

Also *held*, that J. was not a necessary party to the action, as plaintiff was sole executor in this State and alone entitled to recover any assets therein, and any invalid disposition of such assets made by her could not defeat his claim.

(Argued January 23, 1882 ; decided February 7, 1882.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the county of New York, made April 4, 1881, which reversed a judgment in favor of defendant, entered upon the report of referee.

This action was brought by plaintiff, as executor of the last will and testament of Effingham Lawrence, deceased, to recover the proceeds of a draft belonging to his estate, issued out of the treasury of the United States and collected by the defendant, an attorney.

The material facts are set forth in the opinion.

*Sidney S. Harris* for appellant. This being an action for conversion of the draft, or its proceeds, plaintiff cannot recover without payment or tender of payment of the amount, if any, due the defendant for his services. (*Everett* v. *Coffin*, 6 Wend. 603, 608; *Owen* v. *Knight*, 4 Bing. N. C. 54; *Everett* v. *Saltus*, 15 Wend. 474.) The executrix had a lien upon the draft and its proceeds for her expenses and commissions, and the agreement made by her with the defendant for the payment of his services out of the proceeds of the draft operates as an assignment of her lien to defendant, as the possession of the draft and its proceeds were intrusted to the defendant by the executrix. (*Noyes* v. *Blakeman*, 2 Seld.

579 ; *Everett* v. *Coffin*, 6 Wend. 603.) If the claim of the defendant were less than the amount of funds in his hands, he still held a lien on the entire fund for so much as was due him, and even if defendant asserted a lien for more than was due him, it did not deprive him of his lien for such part of his services as he is justly entitled to be paid. (*Hoyt* v. *Sprague*, 61 Barb. 497 ; *Coller* v. *Shepard*, 19 id. 305, 309 ; *Scarfe* v. *Morgan*, 4 M. & W. 270.) Defendant had a lien upon the draft or its proceeds for so much as was due him under the special agreement by the executrix with him, that he should be paid for his services out of the moneys he collected, and he also has an equitable lien upon the proceeds of the draft for his services. (*In re Knapp*, 85 N. Y. 284 ; *Williams* v. *Ingersoll*, 23 Hun, 284 ; *Noyes* v. *Blakeman*, 2 Seld. 579, 580.) The plaintiff's action cannot be maintained because the executrix had all the power that she and the executor had jointly, and could by her individual act bind the estate or its assets by indorsing the draft for the purpose of collection. (*Hertell* v. *Bogert*, 9 Paige, 52–58 ; *Patterson's Estate*, 1 W. & S. 291 ; 3 Redfield on Wills, 222, 223, note ; Williams on Executors, 849, note *z ; Burt* v. *Burt*, 41 N. Y. 46 ; *Whitney* v. *Coapman*, 39 Barb. 482 ; *Peterson* v. *Chemical Nat. Bk.*, 32 N. Y. 21 ; *Hammon* v. *Huntley*, 4 Cow. 495.)

*W. I. Butler* for respondent. The executrix had no power to charge the assets with defendant's retainer. (*Le Baron* v. *L. I. Bank*, 53 How. 286 ; *Austin* v. *Monroe*, 4 Lans. 67 ; Aff'd, 47 N. Y. 360 ; 2 Wait's Table of Cases Supplement; *Ferrin* v. *Myrick*, 41 N. Y. 315 ; 2 Williams on Executors, § 1507 *et seq. ; Seaman* v. *Whitehead*, 78 N. Y. 306 ; *McMahon* v. *Allen*, 4 E. D. Smith, 519 ; *Hoyt* v. *Sprague*, 61 Barb. 497.) Where there are several co-representatives, the admissions and declarations of one are not competent against the others, either to establish the demand as an original one or to revive the debt after the limitation has passed. (1 Greenl. Ev., § 176 ; *Hammon* v. *Huntley*, 4 Cow. 493 ; *Elwood* v. *Diefendorf*, 5 Barb. 407 ; *Bloodgood* v. *Bruen*, 8 N. Y. 362 ; Abb. Trial Ev. 59 ; 3

Williams on Executors [6th Am. ed.], § 2063.) One of several executors cannot bind the others by his contracts. (2 Williams on Executors, § 1017; *Ex parte Ritchie*, 2 Redf.. Surr. R. 330; *Wood* v. *Brown*, 34 N. Y. 337.)

EARL, J. The judgment entered upon the report of the referee having been reversed at the General Term, both upon the law and the facts, we may, upon review in this court, look into the evidence to see whether the reversal was justified.

Effingham Lawrence, a resident of the State of Louisiana, died in that State on the 9th day of December, 1878, leaving a will in which he appointed the plaintiff, his son, and Jennie O. Lawrence, his daughter, executors. Both qualified as executors in Louisiana and took out letters testamentary there. At the time of the testator's death, there was due to him from the government of the United States the sum of $2,000. The executors had employed attorneys in Washington to collect that sum, and it had been allowed, and the defendant, upon the employment of the executors, drew two powers of attorney to enable the attorneys at Washington to obtain two drafts from the government, one of $300 to pay them for their services, and another for the balance of $1,700 for the executors. The draft for $1,700 thus obtained was payable to the executors, not officially, but in their own names, and was by their consent placed in the hands of the defendant; this was in May, 1879. The executor and executrix were not upon amicable terms, and could not agree upon the division of the proceeds of this draft. Jennie O. claimed a large share thereof for her portion, and the plaintiff would not consent that she should have such share, and he would not unite with her in indorsing the draft for the purpose of dividing the proceeds in the manner she claimed. The defendant, who was an attorney residing in this State, held the draft until March 7, 1880, when he surrendered it to the government and received in its place a draft for the same amount, payable to the plaintiff and his sister as executors. Then the defendant procured her indorsement upon the draft, and on the 11th of March, he collected

the amount thereof upon such indorsement from the government, and placed the same in bank to his individual credit.

On the 8th of March, 1880, the plaintiff presented the will for probate in the Surrogate's Court, in the city of New York, and letters testamentary thereon were issued to him as sole executor in this State, and thereafter he demanded of the defendant the proceeds of this draft, and, the defendant having refused to pay the same to him, commenced this action to recover from him such proceeds. The plaintiff in his complaint alleges that the defendant wrongfully converted the draft, and claims to recover of him the proceeds thereof. This action may then be treated as one for money had and received by defendant which belonged to the estate represented by the plaintiff.

The defendant in his answer set up as a defense that he had a lien upon the funds in his hands to the amount of $1,457. Upon the trial the only right by which he claimed to retain the money he had received upon the draft was on account of the lien thus asserted in his answer.

The items making up the sum total of the defendant's alleged lien were set forth in two schedules "A" and "B" annexed to his answer: Schedule "A" amounting to the sum of $237, was for services connected with the exchange of drafts and the collection of the money upon the latter draft from the government, and he claimed and gave evidence tending to prove that Jennie O. Lawrence agreed with him that he should have a lien on and be paid out of the proceeds of the draft for his services in converting the same into money, and that she made such agreement as executrix.

We have carefully read all the evidence and are satisfied that no lien was created for that sum. The draft, as issued, was payable to the two executors who were then residing in or near the city of New York. There was no dispute about it or the liability of the government, and payment of that draft had never been demanded or refused. The executors had no reason to doubt that it would be promptly paid upon presentment at the sub-treasury in the city of New York. All that was needed was for them to indorse it, and then they, or either

of them, could procure payment or place it in the hands of any other person for collection. Jennie O. did not employ the defendant in what he did in changing the drafts and collecting the money upon the last draft for any purpose of the estate she represented, and he knew she did not. Her sole purpose was to benefit herself, and his sole purpose was to aid her in that respect. She desired to get possession of the proceeds of the draft for the purpose of benefiting herself and not for the purpose of benefiting the estate, and she employed him to aid her in accomplishing that purpose. It is too clear for dispute that she could not give him a lien upon the draft or its proceeds for services which he was to render her or had rendered her in her individual capacity, and not as executrix. She could not pledge this draft or its proceeds to pay her private debts, or to discharge her individual obligations, the pledgee knowing her purpose and knowing the facts. With the exceptions of items amounting to $14, contained in schedule "A," which will be hereafter mentioned, the plaintiff did not know of or assent to the employment of the defendant, and all that he did in changing the drafts and converting the last draft into money was against his will and really against the interests of the estate. We cannot perceive, therefore, upon what ground it can be claimed by the defendant that he had a lien upon the draft or its proceeds for the amount of schedule "A," except as to the $14.

The defendant also claims a lien for items contained in schedule "B," amounting to $1,216, and those items were for services and expenses growing out of the following facts and circumstances: At the time of his death the testator and Henry C. Warmoth owned as tenants in common a plantation in the State of Louisiana, the testator owning two-thirds, and Warmoth one-third, and they carried on and managed that plantation as partners, the profits and losses to be divided in the same proportions. The testator had five children and to them before his death he had executed a mortgage for $90,000 upon his portion of the plantation, which was a first lien thereon. He had also executed to Warmoth a mortgage on his portion of the plantation for

$60,000, to secure him for such advances as he had made or should make to him in carrying on the plantation. The five children had, by an agreement with Warmoth, postponed the lien of their mortgage to his, so that his became a first mortgage. After the death of the testator Warmoth claimed that there was due him upon his mortgage about $38,000, and he commenced a proceeding in the State of Louisiana to foreclose his mortgage, and in that proceeding proof was taken of the amount due and it was established at about $38,000, and judgment of foreclosure was entered in his favor, and he became a purchaser at the foreclosure sale about the first of March, 1879, for $39,000 which was a little more than the amount due him under his mortgage. A few days before the foreclosure sale the five children entered into an agreement with Warmoth to sell him their mortgage for the sum of $66,666, and it was agreed between them and him that after deducting the amount due him upon his mortgage, he was to pay the balance of that sum to them for their mortgage, and after deducting the sum of $38,000, he actually paid them the balance. For the purpose of ascertaining the balance which he should pay the children under his agreement with them for their mortgage, he rendered an account to them showing the items of his claim. Of course if they could reduce his claim below $38,000, then so much more would be due them for their mortgage. Jennie O. Lawrence retained the defendant in reference to the Warmoth accounts, to investigate them, and to determine how much was due to Warmoth. It is clear that this retainer was in no way for the benefit of the estate. It had not the remotest interest in the matter. The amount due upon the mortgage as between Warmoth and the testator had been determined in the foreclosure proceeding and had been entirely discharged by the foreclosure sale. All that remained to be adjusted was the amount actually due upon the mortgage, as between Warmoth and the children, so as to know the amount he was to pay them for the mortgage they assigned to him, and all the services rendered as charged in schedule " B " were in connection with that matter. The entire evidence and the correspondence between the defendant and Jennie O. Lawrence

satisfy. us that the services charged in schedule "B" were not rendered for the benefit of the estate, and that they did not, and could not in any way benefit it, and this both the defendant and Jennie O. knew at the time of the retainer and at the time the services were rendered; and hence again, she had no right or power to effectually pledge the draft or its proceeds to pay the defendant for such services.

It was found by the referee that the draft and its proceeds were assets of the estate. To an innocent purchaser or pledgee she could undoubtedly have transferred them, but to one like the defendant, having knowledge of all the facts existing in this case, she could not make a valid transfer as against the estate.

The defendant further claims that Jennie O. with whom he dealt should have been made a party defendant, and that the plaintiff without her presence as a party could not maintain this action to question the pledge or transfer made by her. To this proposition we cannot assent. At the time the plaintiff demanded these proceeds he was the sole executor in this State, and solely entitled to recover and possess any assets to be found within this State. Whatever authority Jennie O. possessed under the Louisiana letters was superseded in this State, when letters were issued to the plaintiff. Any valid disposition of assets which she had made before the letters were here issued remained valid; but an invalid disposition could not stand against the claim of the plaintiff when he came to assert it. (*Parsons* v. *Lyman*, 20 N. Y. 103; *Petersen* v. *Chemical Bank*, 32 id. 21.)

This is not a case of conflicting claims and rights of two acting executors which requires the presence of both as parties to the action. The plaintiff, the only person authorized to act as executor in this State, found these assets in the possession of the defendant, and had the right and the sole right to receive them from him. Jennie O. has no legal interest so far as we can discover in the controversy, and it is not alleged in the answer that she has any. If the defendant has a lien he can establish it without her presence as a party to the action. If he has no lien such as he alleges, then he has no right to retain the money from the plaintiff.

But it was admitted by the plaintiff upon the trial that as to items amounting to $14, the services were rendered for the estate. Those were services rendered in connection with the procurement from the attorneys at Washington of the first draft, and the claim of the defendant now is, that the plaintiff should be defeated in this action because he did not first tender payment of the $14, for which sum in any event he claims he was entitled to a lien upon the proceeds in his hands. This claim is based upon an entire misapprehension of the legal aspects of the case. If this defendant still retained the draft and this were an action to recover it, or for its conversion and nothing more, it may be that it would have been an answer to plaintiff's demand when he made it, that defendant had a lien for the $14 ; but the defendant by his own act had lost his lien upon the draft. He had received payment upon it and discharged it, so that what he had was money which he had mingled with his own and deposited in the bank to his individual credit. Upon that he could have no lien, properly speaking, and the only right he had was to take or claim payment out of the fund in his hands to that amount. In other words, he could retain that amount, but was obliged to account for and pay over the balance. It would be a very absurd rule of law which would require the plaintiff in such case to tender $14 to the defendant before he could recover from him any part of $1,700 in his hands.

We have not deemed it important or profitable in this case to go into a minute discussion of the evidence believing it was sufficient thus briefly to indicate generally our views.

We think the General Term was right, and that its order should be affirmed and judgment absolute rendered against the defendant, with costs.

All concur.

Order affirmed and judgment accordingly.