ESTHER KAMINSKI, Appellant, *v.* CARL SCHEFER and Others, Respondents.

*Advances made on the faith of negotiable bonds, delivered by one who has been placed in possession of them by the owner, will be protected — complaint for money had and received and not for conversion.*

Persons who in good faith and without notice advance money upon the faith of negotiable bonds, delivered to them by a person who has been placed in the possession of the bonds by the owner thereof, are protected to the extent of such advances, but cannot use the bonds to extinguish an indebtedness which was due to them, at the time the bonds were delivered, from the person who made such delivery.

A complaint in an action brought by the owner of the bonds against the persons to whom they were delivered, alleging that the defendants "wrongfully came into possession of said bonds and thereafter wrongfully converted and sold and disposed of the same to their own use, and realized from said sale the sum of $45,000;" and that before such sale the owner demanded the return and delivery to her of the bonds, which was refused, and that by reason thereof, "defendants became liable as for money had and received to plaintiff's use, and promised to pay plaintiff $45,000, the proceeds of said sale," states a cause of action for moneys had and received and not one for conversion.

APPEAL by the plaintiff, Esther Kaminski, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 20th day of January, 1899, upon the verdict of a jury, rendered by direction of the court, and also from an order entered in said clerk's office on the 7th day of February, 1899, denying the plaintiff's motion for a new trial made upon the minutes.

*S. Livingston Samuels,* for the appellant.

*A. Blumenstiel,* for the respondents.

McLAUGHLIN, J. :

On the 8th of July, 1891, Henry M. Kaminski, the husband of the plaintiff, entered into a contract with the defendants to take effect on the first of the following January, which, among other things, provided that the business theretofore carried on by Kaminski — a wholesale millinery business — should, on and after that date,

be transacted by the defendants' firm, Schefer, Schramm & Vogel; that the defendants should take, at the market price, the goods which Kaminski then had on hand and allot to him a space in their store for the sale of his goods; should advance the necessary money to make purchases, from time to time; should make all sales and guarantee the payment of the sales made; and to indemnify the defendants' firm against loss, the contract expressly provided that Kaminski should deposit with them $30,000, "to cover them for eventual losses in Mr. H. M. Kaminski's department."

Shortly prior to the execution of the contract, Kaminski associated with himself in his business his son Edward V. under the firm name of H. M. Kaminski & Son. Edward V. had the active management of the business of the firm, H. M. Kaminski spending a large part of his time in Europe. When the contract went into effect on January 1, 1892, the value of the goods then turned over to the defendants by the Kaminski firm was fixed at $26,000, and to make up the deposit of $30,000 provided in the contract, H. M. Kaminski obtained from the plaintiff eight $1,000 negotiable bonds, which he delivered to the defendants.

In April, 1893, the plaintiff and her husband went to Europe, where they remained until 1895. Just prior to the plaintiff's departure she took her son to the Lincoln Safe Deposit Company's office, introduced him to the person in charge, and delivered to him the keys to her safe deposit box. She had at this time in the box negotiable bonds of the par value of $42,000, and she instructed her son, as the coupons upon the same matured, to clip them off and deposit the same in the bank to the credit of H. M. Kaminski.

Losses were sustained by the Kaminski firm in the business carried on by it, and in July, 1893, the defendants demanded from young Kaminski, or the Kaminski firm, a further margin — the $30,000 theretofore put up having been materially reduced by such losses — and, in pursuance of this demand, young Kaminski, without the knowledge or consent of his mother, took from her box in the Lincoln Safe Deposit Company ten of the bonds above referred to, of the par value of $10,000, and delivered the same to the defendants. About the 1st of January, 1894, another demand was made for additional security, and young Kaminski, on the 31st of January, 1894, without the knowledge or consent of his mother, took from

her box all of the remaining bonds of the par value of some $30,000 odd, and delivered the same to the defendants.

In March, 1895, H. M. Kaminski returned to New York, when, for the first time, he ascertained the true condition of the business of his firm, and also that his wife's bonds had been taken by the son and delivered to the defendants for the purpose of keeping good the margin, or security, provided in the contract. Immediately upon learning this fact, he informed the plaintiff, which was the first knowledge she had on the subject, and she, through an attorney, on the 3d of June, 1895, demanded from the defendants the return of her bonds, which was refused. On the sixteenth of July following the defendants notified her that the Kaminski firm was indebted to them in a sum exceeding $90,000, which was secured by the pledge of certain bonds, and that unless such indebtedness was paid on or before a time stated, the bonds would be sold; and on the third of September following, at the time and place specified in the notice, the bonds were sold and a sum of $40,103.75 realized. Thereafter the plaintiff instituted this action to recover the proceeds derived from the sale, upon the ground that the defendants had wrongfully converted the bonds to their own use, and by reason thereof they had become indebted to the plaintiff in the amount received on the sale, which sum they were liable under an implied promise to pay to her.

In the complaint she alleged that the defendants " wrongfully came into possession of said bonds and thereafter wrongfully converted and sold and disposed of the same to their own use and realized from said sale the sum of $45,000," and that before said sale she demanded the return and delivery to her of the bonds, which was refused, and that by reason thereof " defendants became liable as for money had and received to plaintiff's use and promised to pay to pay plaintiff $45,000, the proceeds of said sale."

In the answer interposed, the defendants denied the material allegations of the complaint, and, as an affirmative defense, alleged, in substance, that the bonds were negotiable securities, payable to bearer; that they were *bona fide* holders for value; that they were delivered to them without knowledge on their part of any interest in the plaintiff, and that they, in good faith on the strength of their possession, advanced to the Kaminski firm large sums of money and

to an amount much in excess of the value of the bonds; that the advances made subsequent to the delivery were made solely upon the faith of their possession and not otherwise; and that none of the bonds were received as collateral to, or as security for, the payment of an antecedent indebtedness, and that after exhausting the value of them there still remained due and owing, on account of such advances, upwards of $25,000.

At the trial it appeared that when the $10,000 of bonds were delivered in July, 1893, the Kaminski firm was indebted to the defendants in a large sum, and that such indebtedness was thereafter increased in a sum exceeding the value of the bonds then delivered. It also appeared that, at the time the $30,000 in bonds were delivered, in January, 1894, the Kaminski firm was then largely indebted to the defendants, and that that indebtedness was thereafter increased to something near $16,000.

At the close of the trial the learned trial justice held that the action was for the conversion of the bonds, and that inasmuch as it appeared that at the time the plaintiff made her demand, the defendants then had a lien on them for advances made to the Kaminski firm, for something like $16,000, and that she was not then entitled to the possession because she did not tender the amount of the lien, therefore the action could not be maintained, and he accordingly directed a verdict for the defendants, to which the plaintiff duly excepted. We think the exception was well taken. The action is not for conversion. It is for money had and received. It is true that plaintiff alleges in the complaint that the defendants wrongfully converted her bonds, but it is also true that she waives the right to maintain an action for conversion by insisting that the defendants are indebted to her for money had and received from the sale of her property. (*Chapman* v. *Forbes*, 123 N. Y. 532; *Byxbie* v. *Wood*, 24 id. 607; *Lawrence* v. *Townsend*, 88 id. 26.)

The defendants acquired the bonds in good faith; they parted with value on the strength of their possession, and they are unquestionably protected to that extent. The plaintiff put her son in a position where he could use these bonds, and one taking them in good faith, they being negotiable securities, was, under all the authorities, protected to the extent that he parted with value. But while the defendants were protected to this extent, they could

neither use them to extinguish a prior indebtedness of the Kaminski firm, nor could they sell and dispose of any more of them than was necessary to satisfy the indebtedness of the firm incurred after the delivery of the bonds to them, and before they had notice that the same belonged to the plaintiff.

It seems to have been conceded upon the trial, at least the testimony introduced by the plaintiff upon that branch of the case was not contradicted, that after the bonds were delivered to the defendants in January, 1894, the indebtedness of the Kaminski firm was only increased to the extent of something like $16,000. The defendants had the right to sell sufficient of these bonds to satisfy that indebtedness, but they had no right to sell more than was enough for that purpose. (*Taft* v. *Chapman,* 50 N. Y. 445 ; *O'Rourke* v. *Hadcock,* 114 id. 541.) The plaintiff was unquestionably entitled to recover whatever amount she could show was realized by the defendants on the sale of the bonds, over and above the value which the defendants had parted with on the strength of the possession of them. (*King* v. *Van Vleck,* 109 N. Y. 363.) This is the precise relief, under the issue formed by the pleadings, to which the plaintiff is entitled. That fact could easily have been ascertained at the trial, and we think the trial court erred in not permitting the plaintiff to introduce testimony bearing upon that subject, and in not submitting the question to the jury for its determination.

The judgment, therefore, must be reversed and a new trial granted, with costs to the appellant to abide the event.

Rumsey, O'Brien and Ingraham, JJ., concurred ; Van Brunt, P. J., concurred in result.

Judgment reversed, new trial ordered, costs to appellant to abide event.