**602**

(69 App. Div. 170.)

LARBIG v. PECK et al.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. APPEAL—HARMLESS ERROR—TRIAL—MISSTATEMENT OF FACTS BY COURT.

An erroneous statement· by the court of facts shown by certain testimony is harmless error, when the court, on objection thereto, afterwards informs the jury that they must rely on their own recollection of the evidence, and determine therefrom if the court was wrong in its statement.

2. PARTNERSHIP—ASSUMPTION OF INDEBTEDNESS.

Money was deposited with W., who thereafter entered into a partnership with E.; and the indebtedness was transferred to the partnership books, and treated as a firm liability, and E. afterwards gave a partnership check in part payment therefor. *Held* sufficient to authorize the submission of the question whether the partnership had assumed the indebtedness to the depositor.

3. FAILURE TO INSTRUCT—APPEAL—HARMLESS ERROR.

Where the court marks certain requested instructions to be included in his general charge, and denies another requested instruction embracing the same proposition of law, and then fails to give the substance of the former instructions in his charge, but the party requesting such instruction fails to call the court's attention to the omission, the failure to give such instructions and the refusal of the other instruction is not reversible error.

4. LIABILITY TO PRINCIPAL.

Where a son had deposited money belonging to his mother with defendants, they supposing it to be his own, and he received a note for such sum without authority from his mother, and on a shortage of his accounts he turned in the note, which was then overdue, to defendants, in repayment of the shortage, they took the note subject to the equities of the mother, whose money on deposit it represented, and who had not authorized her son to accept it; there being no evidence .that in taking the note they lost any right or remedy, or were in any manner prejudiced thereby.

Appeal from trial term, New York county.

Action by Euphemia Larbig against Edwin H. Peck and another. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

George S. Hamlin, for appellants.
James W. Hyde, for respondent.

LAUGHLIN, J. The action is brought to recover the balance of an alleged deposit made with the defendant Walter J. Peck on the 25th day of February, 1889. The receipt of the money was admitted, but the defendants claim, among other things, that it was a loan, and that the statute of limitations has run against the cause ·of action. They further claim that the transaction was with the plaintiff's son, who was in their employ as a bookkeeper, and that he represented to them that it was his money, and they had no notice or knowledge to the contrary. The jury found that the money belonged to the plaintiff, and their finding is amply supported by the evidence. The amount of plaintiff's money delivered to the defendant Walter J. Peck was $7,500, which consisted of $500 in cash

and two notes for $3,000 and $4,000, respectively, indorsed by the plaintiff in blank. The plaintiff's son filled out a demand note therefor at 6 per cent. interest, payable to the order of Walter J. Peck, who signed, indorsed, and delivered the same to him. The plaintiff's testimony shows that she did not authorize her son to accept the note, and had no knowledge of such acceptance until shortly before bringing the action. The evidence was conflicting as to whether the note was given in fulfillment of an agreement made at the time of the deposit of the moneys, or whether it was a subsequent, independent transaction. The court properly submitted this question to the jury, under instructions that the son, having been his mother's agent to negotiate the deposit or loan, was authorized to accept the note for her, if it was part of the original transaction; otherwise not. The only evidence as to the lapse of time after the deposit before the note was given is the note itself, which bears date the day of the deposit; the testimony of plaintiff's son to the effect that he placed it in defendants' safe on that day, and his testimony to the effect that, after depositing the moneys in the bank pursuant to the direction of the defendant Walter J. Peck, he drew the note and presented the same to Peck for his signature. The court, evidently misunderstanding this testimony, misstated it to the jury, and said that the testimony of plaintiff's son was to the effect that the note was delivered to him "several days—a week or two"— after the deposit was made; but later he said:

"The jury will recollect the evidence in that respect, if the court is wrong as to the time when the note was given. If that is not the fact, the jury will remember it, and not be guided by what I say."

At the close of the charge, defendants' counsel excepted to this erroneous statement of the evidence by the court, whereupon the court again admonished the jury that they must depend upon their own recollection of the testimony, and not be guided by what he said in the charge. The defendants' counsel evidently did not recall the testimony correctly, for he said to the court "that, at the utmost, the statement was only that the note was given a day or two after." We cannot set aside the verdict of a jury, in a civil case, at least, on account of an exception to an erroneous statement of fact in the charge, where the court expressly leaves the facts to the jury, and admits to the jury that the recollection of the court thereon may be erroneous, and no request is made that the testimony be read.

The evidence, also, presented a fair question of fact,—as to whether the money was received by the defendant Walter J. Peck on deposit or as a loan; and we would not be justified in disturbing the verdict of the jury, which is to the effect that the money was received on deposit. This claim would not be barred, therefore, by the statute of limitations, inasmuch as no demand was made which set the statute running. About a year after the defendant Walter J. Peck received this money on deposit, he took his brother, the defendant Edwin H. Peck, into partnership with him. This indebtedness was transferred to the books of the firm, and was treated and considered as a firm liability, as were all the other business obligations of said

Walter J. Peck. On the 18th day of March, 1891, the firm paid $1,000, to apply on this indebtedness, by a firm check, payable to the plaintiff's order; the signature being written by Edwin H. Peck. The evidence fairly warranted the submission to the jury of the question as to whether the firm did not assume this liability, and the jury have answered it in the affirmative.

On the 4th day of December, 1897, the defendants, as the result of an extended examination of their books by expert accountants, discovered a considerable shortage in the accounts of plaintiff's son. He was called in and confronted with the statements of the experts, which he was unable to explain. He, however, insisted that he had not taken any of the defendants' moneys, and that, if he had time, he could discover the error. The shortages appeared to have accumulated during a series of years. When asked why he had not reported the matter to his employers, he replied that they had sufficient of his moneys to make up any deficiency. There was evidence to show that, upon its being suggested that he had defendants' note for these moneys, he went to the safe, produced the note, and indorsed and delivered it to the defendants. The report of the experts stated the amount of cash received and accounted for, and showed a deficiency of $6,396.90; and plaintiff's son, at their request, signed it. This constitutes the entire transaction, so far as shown by the record before us, with reference to the redelivery of the note. It will be observed that there was no definite agreement with reference to the settlement, or as to whether the note was to be merely held as security, or applied in extinguishment of the indebtedness. Some months later, and after plaintiff's son left the employ of the defendants, she demanded the return of the money deposited. According to the testimony of the defendants, they had no notice prior to this time, or knowledge, of her claim of ownership; and they stated to her the manner in which the matter had been adjusted with her son. She, however, controverts this, and claims that at that time they acknowledged that they still held her money, and promised to send her a statement concerning the same. The testimony of the son was to the effect that they were informed by him at the time of the original transaction that the money belonged to his mother. A few days after the demand by the plaintiff, and on May 3, 1898, the defendants inclosed to plaintiff's son a statement of their account with him, in which they credited him, under date of November 30, 1897, with the balance of this note and interest, and also inclosed a check, payable to his order, for $37.47,— the balance in his favor as shown by said statement. The testimony of defendants' expert is that this check has not been used, and, as printed in the record, it does not appear to have been either indorsed by plaintiff's son or paid.

In advance of the charge, defendants' counsel presented to the court 35 written requests to charge. At the close of the main charge, defendants' counsel excepted generally to the refusal of the court to charge each of the requests submitted, and to any modification thereof which the court charged as modified, whereupon the court said:

"Of the thirty-five requests which the defendants have submitted to the court, I have marked each one of them as charged or refused to charge. I think I have embodied in my charge all that you have requested, and which I have marked as charged; and to those which I have marked as being refused, either as propositions of law, or because they were questions for the jury, you may have an exception to. Call my attention, however, if you have observed that I have omitted anything which I have marked as charged."

Defendants' counsel thereupon took several exceptions to the charge, none of which require consideration. Requests 13, 14, and 15 were marked by the court as charged. They were to the effect that if the money belonged to plaintiff, but she clothed her son with the indicia of title and apparent power of disposition, then the defendants, in the absence of notice or knowledge to the contrary, were justified in treating the son as the principal and real owner. The record recites that the requests marked "Charged," were not separately charged, and were not in fact charged, unless embraced in the main charge. The main charge did not cover these propositions. The court marked request No. 23, "Refused." It reads as follows:

"If the defendant Walter J. Peck, receiving this money without any knowledge or information that it belonged to the plaintiff, and continued to hold the money without any such knowledge or information, and believing that it was the money of John W. Larbig, who was plaintiff's son, and finally made a settlement with John W. Larbig for moneys taken by John W. Larbig, receiving this note in payment for such moneys in good faith, and without any knowledge or information that it belonged to the plaintiff, and paying over to him the balance, then the defendants are not liable."

The attention of the court was not drawn to the fact that requests 13, 14, and 15 had not been charged. If they had been charged, the refusal of the court to charge the twenty-third request might not be error. While we think defendants' twenty-third request was a correct abstract proposition of law (Chapman v. Ogden, 37 App. Div. 355, 56 N. Y. Supp. 73, affirmed in 165 N. Y. 642, 59 N. E. 1120), the refusal of the court to so charge does not require a reversal. The defendants' counsel could, by looking over the requests as marked by the court, have observed that the court intended to instruct the jury substantially to that effect, and the matter should have been again brought to the attention of the court. Furthermore, the request assumes that the balance has been paid over to the plaintiff's son, which, as has been seen, is not the fact. Again, the testimony scarcely warranted the finding of a settlement between the defendants and plaintiff's son. The real settlement was the statement of the account, and the inclosing of the check for the balance after the defendants became aware of plaintiff's claim. They, at most, received the note, which, on account of the statute of limitations, was not enforceable against them, on the understanding that it was to be applied on account of the existing indebtedness of plaintiff's son to them. This did not constitute an irrevocable obligation on their part to so credit the note, and there is no evidence that the defendants have lost any right or remedy, or have been in any manner prejudiced. Insurance Co. v. Church, 81 N. Y. 218, 37 Am. Rep. 494; Weaver v. Barden, 49 N. Y. 286. The

defendants neither surrendered any security, relinquished any right, nor advanced any new consideration. They, therefore, took the note subject to the equities of the 'plaintiff, whose moneys on deposit with them it represented, and who had not authorized her son to accept the note for her. Lawrence v. Clark, 36 N. Y. 128; Kaminski v. Schefer, 46 App. Div. 170, 61 N. Y. Supp. 771; Taft v. Chapman, 50 N. Y. 445; Moore v. Ryder, 65 N. Y. 438; Weaver v. Barden, supra. Had they paid the check in good faith, without notice of plaintiff's claim, they would have been protected to that extent. Kaminski v. Schefer, supra. But it will be observed that not only has the check not been paid, but it was not drawn until after they had full notice of plaintiff's claim of ownership.

We have examined the other points presented, but find no substantial or prejudicial error requiring a reversal.

The judgment and order should be affirmed, with costs. All concur.