Balch *v.* Patten.

---

HIRAM A. BALCH *versus* ISAAC PATTEN.

*Assumpsit* cannot be maintained against a trespasser who has cut and carried away grass, if he has neither sold it, nor had any benefit from it, but in its use.

The admission of a defendant, pending the suit, made to one in no way connected with the land as plaintiff's agent, or otherwise, that he had no other defence than title to the land, cannot be regarded as an express promise to pay for hay sued for in *assumpsit*, which he had wrongfully cut and taken from the premises; nor does such admission *imply* any engagement to account for it.

The impeachment of a deed, on the ground of fraud, as against creditors, is not a question that can be settled in an action of *assumpsit*.

Balch *v.* Patten.

[NOTE. — This action has previously been before this Court. See Vol. 38, page 353.]

ASSUMPSIT. The writ, which is dated March 18, 1853, contains a count for a quantity of hay, (according to account annexed thereto,) and another for money had and received. The case was heard on the evidence reported by HATHAWAY, J. By the Report, it appears that the plaintiff caused an execution, which he had obtained against one Tobias A. Hall, to be extended on certain real estate, as said Hall's property, on 17th of February, 1851, which levy was recorded June 10, 1851. A witness, who was in no way interested in the controversy, testified, "that defendant in April, 1856, told him he had no other defence to this suit, than title to the land; that he had cut the grass for three years; that he let the man, employed by him to cut the hay, have a part of it for cutting, and he had the benefit of the rest."

Plaintiff proved title to have been in said Hall at a time prior to his levy.

Defendant put into the case a deed from said Tobias A. Hall to Thomas D. Watts, dated June 10, 1839; also a deed from Watts to Charles S. Hall, dated December 29, 1843, acknowledged on the same day; also one from Hall to Ruth M. Hall, wife of said Tobias A. Hall, dated July 17, 1849. And plaintiff offered evidence tending to show that these conveyances were fraudulent as against the creditors of said Tobias A. Hall.

The defendant claimed to act as the agent of said Ruth M. Hall.

If, upon the evidence, the plaintiff can maintain his action, the defendant is to be defaulted, otherwise plaintiff to become nonsuit.

*B. Bradbury* argued for plaintiff.

The act of the defendant was originally a tort, which it was competent for the parties to waive. And, if it be waived by them, the owner may have his remedy in assumpsit, even in an action for use and occupation, where the relation of landlord and tenant does not exist. *Curtis* v. *Treat*, 21 Maine, 525.

When defendant stated that he had no other defence to this action than title to the land, he admitted a waiver of the tort, and his liability to plaintiff in this form of action, unless protected by the failure of plaintiff to show title to the land in himself. It was equivalent to an express promise to pay, if the title to the land was in the plaintiff.

But, if both parties have not waived the tort, still this action may be maintained, because the defendant sold or used the hay. He sold a portion of the hay to the man who cut it. In *Miller* v. *Miller*, 7 Pick. 285, payment was made in goods. It is the same if payment be made in labor. In another case, assumpsit was maintained where the trespasser had sold and *received no pay*. The balance of the hay the defendant either sold or used; in either case the result is the same. 2 Greenl. Ev. § 108, page 95, note (5,) and cases there cited. *Cummings* v. *Noyes*, 10 Mass. 436; *Webster* v. *Drinkwater*, 1 Greenl. 323; *Chauncey* v. *Yeaton*, 1 N. H. 451; *Jones* v. *Hoyt*, 5 Pick. 285; *Hill* v. *Davis*, 3 N. H. 384; *Johnson* v. *Speller*, 1 Doug. 167, note; *Smith* v. *Holsen*, 4 Term R. 211; *Appleton* v. *Bancroft*, 10 Met. 231; *Balch* v. *Pattee*, 38 Maine, 335.

The last case is the same as that now before the Court, in which it is intimated that the use of the property by the defendant would lay the foundation for assumpsit.

The money counts may be supported by evidence of the payment or receipt, (as the case may be,) not only of money but money's worth. *Payson* v. *Whitcomb*, 15 Pick. 212, 216; *Randall* v. *Rich*, 11 Mass. 494, 498; *Emerson* v. *Baylies*, 19 Pick. 55, 57.

The defendant alleges that the action cannot be maintained, because, he says, the testimony offered by him puts in issue the title to these premises, and that the title to real estate cannot be tried in assumpsit, and exhibits a proper title in one Thomas D. Watts, prior to the date of the levy of the plaintiff.

The direct question at issue, in this case, is the ownership of the hay. In determining this question, the title to the land incidentally becomes matter of controversy.

· If A. enters upon the land of B. and cuts, carries away and converts into money, the timber growing there, B. may waive the tort and maintain assumpsit; but, in order to show his title to the timber cut, he must show his title to the land. May he not do this? Must he not do it? Can he show it in any other way?

. If the title had been established by a judgment upon a writ of entry, still he must offer the judgment in evidence. The Court must consider it and determine upon it.

Can the defendant, then, come in and plead title in himself, and upon such a plea will the Court say, we cannot try this question, title to real estate is put in issue?

I apprehend, that where the direct question, in an action of assumpsit, is, upon the title to personal property, the Court may determine, incidentally, the title to real estate, so far as it has a bearing upon the ownership of the personal property.

In an action for trover, the title to the property may depend upon a title to land, and the Courts determine always incidentally as to the validity of the title to real estate, so far as it affects the ownership of the personal property claimed.

It is true that nothing is settled in assumpsit, in a case like the one at bar, but the individual case. Yet, in trespass *de bonis*, trover, and assumpsit, the title to real estate often arises incidentally, and why should not the Court try that question in assumpsit, as well as in trespass *de bonis* or trover.

I cannot see why such an objection should prevail, nor do I suppose it will.

The question, then, returns, was the plaintiff the owner of this land? The defendant denies that he was, because Tobias A. Hall, prior to the levy made by plaintiff, conveyed the premises to Thomas D. Watts, who conveyed them to Charles S. Hall, who conveyed them to Ruth M. Hall, wife of Tobias A. Hall, whose agent defendant claims to have been.

The plaintiff alleges that these conveyances are fraudulent and void. The evidences of fraud in this case are marked; it is covered all over with badges of fraud. The testimony ·

reported, and the depositions in the case, clearly establish the fraud.

The defendant, failing to establish the title of Ruth M. Hall, fails in his defence.

*G. F. Talbot,* for defendant.

The plaintiff cannot recover in this action, because the evidence, he introduces, establishes the legal title of Ruth M. Hall, whose servant and agent he claims to be, in the premises.

The evidence in the case does not show that the deed from Tobias A. Hall, in 1839, was not a *bona fide* deed. Nor is there any evidence to show that the plaintiff, at that time, was a creditor of Hall. His judgment was not recovered until 1851. But, whatever may have been the character of the conveyance, only a court of equity can set it aside. *Gardiner Bank* v. *Wheaton,* 5 Greenl. 573; *Traip* v. *Gould,* 15 Maine, 82; *Caswell* v. *Caswell,* 28 Maine, 232; *Webster* v. *Clark,* 25 Maine, 313.

I do not, however, deem it important to discuss the character of the conveyance from T. A. Hall to Watts, apprehending that the case will turn upon another point, viz.: —

Assumpsit cannot be maintained by this plaintiff for the cutting and conversion of the hay, because the act, if the plaintiff have any right to inquire into it, was a *tort,* and of itself furnishes no basis of a promise. In *Jones* v. *Hoar,* 5 Pick. 285, the Court refer to the opinion of Judge Strong, who tried that case in the Common Pleas, adopt it and append it in a marginal note. Judge Strong establishes with great precision the law of waiving torts and pursuing the remedy of *assumpsit.* After reviewing the leading English decisions, he lays down this as the result of his investigation. " Where the action is brought against the original tort feasor, unless there are some circumstances accompanying the transaction which will authorize the plaintiff to consider it a contract, or the property taken has been turned into money or money's worth, the plaintiff cannot waive the tort and bring assumpsit."

PARKER, C. J., recapitulates the principle in these terms. " The whole extent of the doctrine, as gathered from the books, seems to be, that one whose goods have been taken from him or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrongdoer sell the goods and receive the money, waive the tort, affirm the sale, and have an action for money had and received *for the proceeds.*"

Our own Court has adopted the law of this case, in *Simpson & al.* v. *Bowden,* 33 Maine, 549 ; *Richardson* v. *Kimball,* 28 Maine, 463 ; *Howe* v. *Russell,* 41 Maine, 446 ; *Emerson* v. *McNamara,* 41 Maine, 565 ; *Hall* v. *Huckins,* 41 Maine, 574.

What is meant, in the discussion in all these cases, by waiving the *tort* and affirming the *contract,* upon which assumpsit may be brought ? Most clearly the *contract of sale.* It is assumed, by fiction of law, that the goods are *rightfully* in the hands of the tort feasor, that the tort feasor has become his agent, and that, in selling, he sells as the agent, and is accountable, not for the value of the goods, but for the actual avails of the sale. It is not that the goods have come into the tort feasor's hands, therefore he must pay for them, for the fiction is, that the owner entrusted them to his hands, he sold them for him, and promises to pay over the proceeds.

Thus, in *King* v. *Leith,* the Court say, " the assignees are entitled to receive what the party really received, which is *only what the sale produced.*" In *Feltham* v. *Terry,* " he may waive the tort and go for the *money clearly due.*" In *Lindon v. Hooper,* " he is liable to refund only *what he has actually received*" — * * "for the amount of money which the goods sold for." In *Humbly* v. *Trott,* Lord Mansfield said, " the Court will allow the plaintiff to waive the tort and bring an action in which he can recover nothing more than the sum *actually received.*" Judge STRONG's notes in *Jones* v. *Hoar,* above cited.

Judge SHEPLEY says, in *Richardson* v. *Kimball,* " the plaintiff may waive the tort, and recover for the fruits of that tort, the amount *received by the defendant in money.*"

Now, in this case, there was no sale at all. There is testimony tending to show that Patten "cut a ton of hay in 1851, and a ton and a quarter in 1852. That he had the hay, that he had the benefit of it." This shows that he did not sell. It is true, he let a man have a part of the hay for *cutting it.* But this was no proceeds of the hay, no avails of a sale, no funds in his hands, which he is to account for as *money had and received,* but expenses incurred and a charge upon the property. Even if Patten had sold, he would be obliged to refund only the proceeds of the sale of the hay, less what he had expended in cutting it. This being the fact, under the law as the Court have established, I conceive, that the objection to the action is perfectly fatal.

As assumpsit cannot be brought upon the transaction itself between the parties, it can only be brought upon a promise which the defendant made, or which the Court may imply. The defendant made no such promise.

When this case was before the Court, on the first trial, (see *Balch* v. *Patten,* 38 Maine, 353,) a nonsuit was ordered upon the evidence of the plaintiff alone. The defendant put in no justification, and stood before the Court as a mere wrongdoer. The nonsuit was removed, because "evidence was introduced tending to show that the defendant cut the hay in the summer of 1851 and 1852, and *that he promised the plaintiff* to pay therefor, on the condition that the place, upon which the hay was cut, was the property of the plaintiff." But the evidence in the case does not come up to any thing of the kind. Mr. Freeman is employed to go to the defendant and ask him, "if he had any other defence to the action than the title to the land," and defendant replied that he had not. This comes very far from being a promise to pay. It is no promise to pay upon condition, even. It is a flat refusal to pay.

Neither will the law imply a promise. The defendant was in possession as the servant of Mrs. Hall, who claimed title under deed. That possession was adverse to the plaintiff. Hence the relation of landlord and tenant could not exist. A suit for use and occupation, even, could not be sustained in

such a case. *Wyman* v. *Hook*, 2 Greenl. 338; *Simpson* v. *Bowden*, 33 Maine, 549; *Howe* v. *Russell*, 41 Maine, 446.

It would be most singular, if the Court might imply a promise on the part of Patten to pay Balch for this hay, when the case discloses, and the defence implies, a direct refusal to pay, on the ground that the land was his principal's and that he was to account to that principal.

In this action, the plaintiff is in fact seeking to obtain a judgment that shall affirm his title to a piece of land in dispute. But, in *Codman & al.* v. *Jenkins*, 14 Mass. 93, the Court say:—"*Indebitatus assumpsit*, for rent, will not lie in favor of a stranger, *for the purpose of trying his title, or by one of two litigating parties claiming the land;* this action, not depending upon the validity of the plaintiff's title, but on a contract between the parties, either express or implied." And C. J. PARKER says, in *Miller* v. *Miller*, 7 Pick. 133, "It does not appear that there was any controversy about the title of the parties to the land from which the wood was taken, the price of which was sued for in this action. If that had been the point in dispute, the plaintiff might have been nonsuited and turned over to his writ of entry, or petition for partition." See Perkins' notes in same case.

When this case was previously before the Court, Judge TENNEY was careful to mention, as one of the grounds of taking off the nonsuit, " *that the defendant claimed no right in the land.*" If the title of the defendant had been put in, as it now is, it would have then been apparent that the action could not be maintained.

What I contend for may be briefly recapitulated thus:—

The defendant never promised the plaintiff; because the property taken was the property of Ruth M. Hall, his principal, who was in *actual possession* of the land under a recorded deed from the person from whom the plaintiff derives title. Plaintiff, though he had gone through the formalities of a levy, had not obtained actual possession; nor had there been any judgment of Court, upon writ of entry, or bill in equity, affirming his title as against the title of the defendant's principal.

The plaintiff's remedy, if he has any, is not in assumpsit.

1st. Because he never promised to pay, conditionally or otherwise.

2d. Because the law will not imply a promise, the relation of landlord and tenant not existing, and the defendant claiming adversely.

3d. Because the defendant did not sell the hay for the money or money's worth, and so has no *proceeds* in his hands which can be sued for as money had and received.

Nor will the Court permit *indebitatus assumpsit* " by one of two litigating parties claiming the land."

The opinion of the Court was drawn up by

TENNEY, C. J.—Insuperable difficulties are presented in the report to the maintenance of this action. The defendant had a conversation with William Freeman touching this suit, in April, 1856, in which he said he had no other defence thereto than the title to the land. This, certainly, cannot be regarded as an express promise to pay for the hay which he cut; neither does it *imply* an engagement to account in any way therefor, being said to one who had no connection with the land, as the plaintiff's agent or otherwise.

The plaintiff relies upon a title to the land in himself, under his levy on execution against Tobias A. Hall, and the fact that the defendant had the benefit of the hay, in support of the count for money had and received. It is well settled that where a party has obtained property belonging to another, by a trespass, and has received money therefor, or money's worth, the tort may be waived and assumpsit maintained by the owner. *Jones* v. *Hoar*, 5 Pick. 285, and note. But the evidence does not bring this case within the principle. Simply receiving the benefit of the hay in its use, by the one who took it, does not constitute a basis for the action in favor of the plaintiff, if the title to the land on which it grew was in him.

But the title to the land is claimed by the defendant to have

been in Ruth M. Hall at the time the grass was cut by him, and that he was acting as the agent for taking charge of the property. By the deeds on record, the title was then in Ruth M. Hall, but the plaintiff treats that title as void against creditors of Tobias A. Hall, on the ground of fraud. Whether it can be impeached on this ground, by the plaintiff, is not a question which can be settled in an action of assumpsit. *Codman & al.* v. *Jenkins,* 14 Mass. 93. *Plaintiff nonsuit.*

RICE, HATHAWAY, APPLETON, CUTTING, and GOODENOW, J. J., concurred.