William F. O'Rourke, Appellant, v. John I. Hadcock, Respondent.

When a mortgagee, holding a mortgage upon several chattels, continues to sell after he has realized sufficient to pay the debt and costs, he becomes a trespasser.

Where several distinct chattels are sold upon condition that the title shall not pass to the vendee until the agreed price is paid, and the vendor, in affirmance of the contract, seizes the chattels for the avowed purpose of selling them and collecting the amount due, he has no right to seize and sell or retain more than is sufficient to satisfy his demand and expenses.

Where an executory contract for the sale of chattels provides that the purchase-price shall be paid in installments, and that title shall not pass until the price is fully paid, and the vendor permits the vendee to retain possession and make other payments, after the whole contract-price is due, he may not seize the property and terminate the contract for non-payment until he has demanded payment.

Plaintiff contracted to sell to defendant a canal boat and furniture, and four mules with their harnesses, on credit, the purchase-price to be paid in installments. The contract provided that defendant was to have immediate possession, but that title to the boat should not pass until the purchase-price was paid. To secure the payment defendant executed to plaintiff a mortgage upon another canal boat. Subsequently, and after the whole purchase-price became due, plaintiff took possession of the mules and advertised them for sale, together with the boat sold with its furniture; and on the same day, by separate notice, advertised the other boat for sale under and by virtue of the chattel mortgage, and then

brought this action to recover possession of the two boats, their furniture, etc. These were seized by the sheriff and delivered by him to plaintiff, who sold them pursuant to said advertisements. The four mules and their harnesses were worth more than the balance of the purchase-price unpaid to plaintiff. *Held*, that the action of plaintiff was an election to affirm the contract and collect the amount due upon it and that judgment was properly rendered against the plaintiff for the value of the mules, less the amount unpaid; also, for the value of the use, and damages for the detention of the two boats; also for their value in case a return could not be had.

It appeared that defendant had commenced an action against plaintiff for an accounting, claiming that the purchase-price had been paid and asking that the notes given for the purchase-price, the chattel mortgage and contract be surrendered, and that defendant be restrained from selling the property described in the contract and mortgage. On trial of said action the referee found that the plaintiff was still indebted to the defendant in the sum of $126.38 and directed a dismissal of the complaint. Judgment was entered pursuant to the report. *Held*, that the judgment-roll was conclusive evidence in this action as to the amount unpaid.

(Argued May 1, 1889; decided June 18, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made April 20, 1886, which affirmed a judgment in favor of the defendant, entered upon the report of a referee.

On the 31st day of May, 1873, the plaintiff was the owner of the canal boat "Jay Pettibone," its tackle and furniture and four mules and their harnesses, then used in towing the boat. On that day a written contract was entered into between the parties, by which plaintiff agreed to sell to defendant this property for $6,000, which the defendant agreed to pay in twelve equal installments, with interest, the last payment falling due November 1, 1875. To secure the payment of these sums defendant gave twelve promissory notes. It was stipulated in the written contract that defendant should have immediate possession of the property, but that title to the boat should not pass from the plaintiff to the defendant until the purchase-price was paid, but the contract contains no provision in respect to the mules and their harnesses. At the date named defendant was the owner of the canal boat

"Dr. M. S. Kittinger," its tackle and furniture. To secure the payment of said $6,000 the defendant mortgaged the property last mentioned to the plaintiff.

On the 27th of June, 1876, there was an unsettled account between these parties, embracing many items, extending through several years and aggregating more than $30,000, inclusive of the outstanding notes given by the defendant to the plaintiff for the purchase-price of said boat. At this time a dispute as to the state of these accounts arose between the parties, each claiming to be the creditor of the other. On the day last named the plaintiff advertised that by virtue of the contract and chattel mortgage he would sell the boats by public auction on the 7th of July, 1876, and at the same time seized the "Pettibone" and held possession of it for one day.

July 7, 1876, Hadcock, the defendant herein, began an action against O'Rourke, the plaintiff herein, setting up the existence of the aforesaid executory contract, the promissory notes and chattel mortgage, the open account, and alleged that he had fully paid for the boat, and prayed for an accounting and for a judgment that O'Rourke surrender up the notes, chattel mortgage and contract, execute to him a bill of sale of the "Jay Pettibone," and that he be restrained from selling the property described in the contract and mortgage. An issue was joined in this action, which was referred to a referee, who found that the plaintiff, Hadcock, was still indebted to O'Rourke, the defendant, in the sum of $126.38, and directed a judgment dismissing the complaint, with costs. December 30, 1881, a judgment was entered pursuant to the report.

July 21, 1876, the plaintiff claimed that the notes, or some part of them, were unpaid, and took from the defendant and converted to his own use, without defendant's consent, said four mules and harnesses. On the next day, July 22, 1876, the plaintiff advertised that he would sell on July twenty-eighth, at ten o'clock A. M., the "Pettibone," her tackle, apparel, furniture and the four mules and their harnesses at public auction by virtue of the executory contract of sale. And on the same day, by a separate notice, advertised that he would sell

the boat "Dr. M. S. Kittinger," her tackle, apparel and furniture at public auction at the same time by virtue of the chattel mortgage.

July 22, 1876, this action for the recovery of the possession of the two boats, their tackle, apparel and furniture was begun, and on the twenty-fourth of July the sheriff seized the property; and the defendant not excepting to the plaintiff's sureties, nor requiring the return of the chattels pursuant to the Code of Procedure, the sheriff delivered the chattels to the plaintiff. July 28, 1876, the plaintiff sold the "Kittinger" pursuant to his notice of sale under the chattel mortgage for $800, and the "Pettibone" pursuant to his notice of sale under the executory contract for $1,500.

This action was referred to the same referee who determined the first action, and he found that, on the 21st of July, 1876, the plaintiff was indebted to the defendant, on account of the executory contract and twelve notes, in the sum of $126.38. He also found that the four mules and their harnesses were, on July 21, 1876,

| | | |
|---|---:|---:|
| Of the value of.......................... | $770 | 00 |
| Deducting from this amount (the remainder due upon the note, from the value of the mules).... | 126 | 38 |
| Left due from O'Rourke to Hadcock....... | $643 | 62 |

| | | | | |
|---|---:|---:|---:|---:|
| It was found that the value of the "Pettibone" at the time of the trial was................. ........... | $750 | 00 | | |
| That the value of her use and the damages for her detention was.... | 4,150 | 00 | | |
| | | | $4,900 | 00 |
| That the value of the "Kittinger" at the time of the trial was.......... | $650 | 00 | | |
| And the value of her use and the damages for her detention was.... | 3,350 | 00 | | |
| | | | 4,000 | 00 |
| Total................................. | | | $8,900 | 00 |

Judgment ·was directed for $8,500, the value of the use ·and the damages for detention of ·the ·two boats, and for the return of the two boats, but in case a ·return could not be had, for $1,400, their value, which was entered in accordance with this report, with costs.

Further facts appear in the opinion.

*J. M. Humphrey* for appellant. Replevin may be maintained against the purchaser to obtain the possession of goods sold to him on conditions which he has failed to fulfill. (*M. S. Co.* v. *Emanuel*, 12 N. Y. S. R. 134; *Russell* v. *Minor*, 22 Wend. 659; *Palmer* v. *Hand*, 13 J. R. 434.) On default in payment plaintiff's title to the property became absolute and he could maintain an action for its possession as his absolute property. All legal right of the defendant (mortgagor) was gone; his only interest was an equitable right of redemption. (*Halsee* v. *Walter*, 34 How. Pr. 388; *Burdic* v. *McVanner*, 2 Denio, 170; *Fuller* v. *Acker*, 1 Hill, 475; *Dane* v. *Mallony*, 16 Barb. 49; *Charter* v. *Stevens*, 3 Denio, 33; *Chamberlain* v. *Martin*, 43 Barb. 607; 2 Wait on Actions and Defenses, 179; *Patchin* v. *Pierce*, 12 Wend. 61; *Connors* v. *Carpenter*, 28 Vt. 237; *Flanders* v. *Barstow*, 18 Me. 357; *Brown* v. *Bennett*, 8 J. R. 49; *Langdon* v. *Buel*, 9 Wend. 80; *Halsted* v. *Swartz*, 46 N. Y. 289; 46 How. Pr. 291; *Campbell* v. *Burch*, 60 N. Y. 214; *Hall* v. *Ditson*, 55 How. Pr. 29; *Stoddard* v. *Dennison*, 2 Sweeny, 54.) In this action the right to the possession of the property at its commencement is alone involved. The judgment in this class of actions determines that alone. It does not prevent another and different actions to settle other rights the parties may have in it then or subsequently. (*Deyoe* v. *Jameson*, 33 Mich. 94; *Moulton* v. *Smith*, 32 Me. 406; *Bush* v. *Lyon*, 9 Cow. 52; *Redman* v. *Henchinks*, 1 Sandf. 32; *Ragen* v. *Arnold*, 12 Wend. 30; *Charter* v. *Stevens*, 3 Denio, 33; *Bragelman* v. *Dane*, 69 N. Y. 70; 3 Denio, 33.) The receiving in evidence of the judgment-roll in the action of *Hadcock* v. *O'Rourke*,

and also the report of the referee therein, was error. (Code, § 1209; *Coit* v. *Beard*, 33 Barb. 351; *Dexter* v. *Clark*, 35 id. 271; *People* v. *Vilas*, 36 N. Y. 463; *People ex rel.* v. *Johnson*, 38 id. 63; *Bostwick* v. *Abbott*, 40 Barb. 335; *Wheeler* v. *Buckman*, 51 N. Y. 391; 35 How. Pr. 350; *Audebon* v. *Excelsior Ins. Co.*, 27 N. Y. 216.) A nonsuit is equivalent to a dismissal under the Code, and no bar, unless it affirmatively appears that it was granted upon a determination of the merits. (*Cambell* v. *Consales*, 40 Barb. 509; 25 N. Y. 613; *Sweet* v. *Tuttle*, 14 id. 465; *Canhope* v. *Parke*, 11 N. Y. S. R. 300.)

*George J. Sicard* for respondent. An instrument of the character of this agreement will not be supported as a conditional sale where the intention of the parties is manifest. (*Smith* v. *Lynes*, 5 N. Y. 41; *Wait* v. *Green*, 36 id. 556; *Ballard* v. *Burgett*, 40 id. 314; *Bean* v. *Edge*, 84 id. 510; *Dows* v. *Kidder*, Id. 121; *Parkes* v. *Baxter*, 86 id. 587; 24 Alb. L. Jour. 226, 264; *Marvin Safe Co.* v. *Norton*, 57 Am. Rep. 576.) The whole question of whether or not this instrument shall be treated as a chattel mortgage is a question of intention of the parties. (Jones on Mort. §§ 258, 263, 265, 279, 325; *Smith* v. *Crosby*, 47 Wis. 160; *Lane* v. *Shears*, 1 Wend. 433; Benj. on Sales, §§ 562, 564; *Lord* v. *Belknap*, 1 Cush. 284; *Robinson* v. *Cropsey*, 2 Edw. Ch. 138.) There had been no proper forfeiture of the contract, because the defendant Hadcock had been allowed to retain possession of the boat and other property after the last note became due in the fall of 1875, and O'Rourke had received payments upon the indebtedness after the said date. In order to seek a forfeiture O'Rourke should have claimed it when the last note became due and was not paid. (*Hutchings* v. *Munger*, 41 N. Y. 158; *Cushman* v. *Jewell*, 7 Hun, 529; *West* v. *Crary*, 47 N. Y. 423; *Lees* v. *Richardson*, 2 Hilton, 164; *Bissell* v. *Bissell*, 4 N. Y. Week. Dig. 338; *Lawrence* v. *Dale*, 3 Johns. Ch. 23; *Van Loan* v. *Willis*, 13 Daly, 281; *Preston* v. *Whitney*, 23 Mich. 267.) The obligations of the seller and buyer are concurrent conditions, and

the former is bound to exact the performance of the condition either at the time when he first has the right to claim such performance, or within a very short time afterwards, or he will be deemed to have waived it. (*Hennequin* v. *Sands*, 25 Wend. 641; *Mills* v. *Halleck*, 2 Edw. Ch. 652; *Lupin* v. *Marie*, 6 Wend. 77; *Furniss* v. *Hone*, 8 id. 247; *Lees* v. *Richardson*, 2 Hilton, 164; *Wright* v. *Pierce*, 4 Hun, 352; *Osborn* v. *Gantz*, 60 N. Y. 542.) The acts of O'Rourke in the proceedings taken by him in July, 1876, to enforce the conditions of sale were entirely inconsistent with any intent on his part to enforce such conditions and avoid the sale. Such acts amounted to a waiver of the conditions, and his intent may legally be inferred from the acts of the parties. (*Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 419; Benj. on Sales, § 562; *Lane* v. *Shears*, 1 Wend. 433; *Smith* v. *Crosby*, 47 Wis. 160; Jones on Mort. § 258; *Van Loan* v. *Willis*, 13 Daly, 281.) When plaintiff, after the sale, arranged for the transfer of the property, he exercised a right which the contract did not confer upon him in case of forfeiture thereof; but which was given to him if the agreement in evidence was designed and intended simply as a mortgage security for the payment of the notes. Those acts were, therefore, a recognition of the validity of the agreement as a mortgage only. (*Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 418.) Acts of a party which influence and are calculated to lead another into a line of conduct which the latter adopts, and which must be prejudicial to his interests, constitute an equitable estoppel. (*Brown* v. *Bowen*, 30 N. Y. 519; *Plumb* v. *Catt. Co. Ins. Co.*, 18 id. 392; Bigelow on Estoppel.) The design to mislead is not essential; if the act is calculated to mislead, and the party interested acts thereon and is prejudiced, it is enough to make out equitable estoppel. (*Brookman* v. *Metcalf*, 34 How. Pr. 429; *M. and T. Bank* v. *Hazard*, 30 N. Y. 226.) A judgment between the same parties is conclusive, not only as to the grounds covered by it and as to all questions necessarily involved therein, and all facts necessary to support it, but also as to every other matter or thing within the purview of the original action, either as

matter of claim or defense, and which might have been litigated and decided as essentially connected with the subject-matter of such action. (Abbott's Trial Ev. 826, 832; *Jordan* v. *Van Epps*, 85 N. Y. 428; *Blakely* v. *Colder*, 15 id. 617; *Patrick* v. *Shaffer*, 94 id. 424; *Pray* v. *Hegeman*, 98 id. 351.) The taking of the mules and harness by O'Rourke, and their value being established, the rule as laid down by the decisions would require that O'Rourke should credit upon the debt the value of said property, thus extinguishing the indebtedness of Hadcock. (Jones on Mort. § 702, 773; *Charter* v. *Stevens*, 3 Denio, 33; *Bragelman* v. *Dane*, 69 N. Y. 69; *Montgomery* v. *Lee*, 10 N. Y. S. R. 119; *Case* v. *Broughton*, 11 Wend. 106; *Craig* v. *Tappan*, 2 Sandf. Ch. 78, 90; *Spencer* v. *Harford*, 4 Wend. 385, 387; *Morgan* v. *Plumb*, 9 id. 292; *Stearns* v. *Marsh*, 4 Denio, 227; *Pulver* v. *Richardson*, 3 T. & C. 436; *Stoddard* v. *Dennison*, 7 Abb. Pr. [N. S.] 316; *Olcott* v. *T. R. R. Co.*, 27 N. Y. 565; Boone on Mort. § 273; *Coe* v. *Cassidy*, 72 N. Y. 138; *In re Haake*, 2 Sawyer, 231.) The value of the canal boats must be fixed by the referee, and also the damages to be recovered by the defendant for the detention of such boats, and judgment must be for such return and such damages. (Code, §§ 1722, 1726, 1730.) The value of the use of the boats during the period of detention is a proper measure of damages to be awarded in addition to the value of the boats at the time of trial. (Code, § 1730; *Allen* v. *Fox*, 51 N. Y. 562, 565; *Clinton* v. *Townsend*, 1 T. & C. 330; *Slocum* v. *Delano*, 17 Week. Dig. 207; *Keep* v. *Kauffman*, 38 Super. 476; *Yandle* v. *Kingsbury*, 22 Am. Rep. 282; *Washington Ice Co.* v. *Webster*, 62 Me. 341, 362.) The referee's findings as to the value of the use of the boats being within the range of the testimony will not be now disturbed. (*Wright* v. *Saunders*, 65 Barb. 214; *Murtha* v. *Curley*, 12 Abb. N. C. 12.)

FOLLETT, Ch. J. The referee by his decision, in effect, finds that the plaintiff elected to affirm the contract of sale and collect the amount due upon it. The plaintiff's conduct was

entirely consistent with this theory, and utterly inconsistent with the plaintiff's present theory, that he disaffirmed the contract of sale and relied upon his title reserved by the contract. The plaintiff advertised that, by virtue of the contract and chattel mortgage, he would sell by public auction, July 7, 1876, all of the property described in these instruments, and again, that he would sell the property by public auction by virtue of the contract and mortgage, July 28, 1876, and on the day last named he did sell all of the property (he having acquired possession of it through this action), except the mules and their harnesses. The plaintiff called Mr. Davis as a witness, who testified that he attended the sale as attorney for the plaintiff and that the plaintiff was present. He also testified : "Both boats were sold within half an hour; the 'Pettibone' was sold first; I recall it because the 'Pettibone' was the original security, and the 'Kittinger' was sort of a collateral; after the sale of the 'Pettibone,' I recall that I asked Mr. O'Rourke to give me the amount of his claim, and Mr. Anthony, who had kept the books for Mr. O'Rourke, gave me the amount of claim, a statement; then I directed the sale of the 'Kittinger' upon the information that the 'Pettibone' had not sold for enough to satisfy the claim; I gave that direction." It is apparent that the plaintiff did not avail himself of his right to rescind the sale and repossess himself of the property described in the contract by virtue of his legal title, in case any part of the price was unpaid; but he elected to collect the sum which he claimed to be due, and he thereby affirmed the sale. Had he disaffirmed the sale he could not have legally done more than to retake the property sold. But, instead of doing only this, he enforced the chattel mortgage and the contract for the avowed purpose of collecting his debt. It is well settled that when a mortgagee holding a mortgage upon several chattels continues to sell after he has realized enough to satisfy the debt and costs he becomes a trespasser. So when several distinct chattels are sold upon condition that the title shall not pass from the vendor to the vendee until the agreed price is paid, and the vendor, in affirmance of the con-

tract, seizes the chattels for the avowed purpose of selling them and collecting the amount due upon the contract, he has no right to seize and sell or seize and retain more than is sufficient to satisfy his demand and expenses. The plaintiff asserted in his notice of sale that he would sell the mules and their harnesses to satisfy his claim; and, though the title to them was not reserved by the contract, we think he is now estopped from saying that his act was not by virtue of the contract and for the purpose of collecting his debt, but was wholly wrongful. But it is said that the case does not show that the mules and their harnesses were sold. The only evidence upon this subject was given by Davis, who testified:

"The mules were not sold at this time (July 28, 1876), nor were the harnesses." The trial of this case was not concluded until March 3, 1884, more than seven years after the plaintiff took the mules and their harnesses. He was examined but did not explain what he had done with this property; and the evidence justified the referee in finding either that the property had been sold or its condition so changed that he was liable to account for its value by way of application as a payment upon the very debt which he sought to collect by taking the property, and by this action, arising out of the very contract, by virtue of which they were taken. When an executory contract for the sale of chattels provides that title shall not pass until the agreed price is fully paid, which is payable in installments, and the vendor permits the vendee to retain possession and make other payments after the whole contract-price is due, the vendor cannot seize the property and terminate the contract for non-payment until he has demanded payment of the vendee. (*Hutchings* v. *Munger*, 41 N. Y. 155.) There is no evidence in this case that the plaintiff demanded payment of the defendant. Davis testified that he demanded the boats and property covered by "these mortgages," which the defendant denied. The referee did not find whether possession of the boats and their furniture was demanded, but he did find that the plaintiff took the mules and their harnesses without a previous demand.

The judgment-roll in the first action between these parties was evidence of the amount due from the defendant to the plaintiff. This amount was the subject litigated in the action. The record shows that the judgment was rendered on the merits, and so it became conclusive between the parties. (Code of Civil Pro. § 1209.)

The judgment should be affirmed, with costs.

BRADLEY, J. (dissenting). The action is replevin, brought to recover the possession of two canal boats, known as "Jay Pettibone of Buffalo" and "Dr. M. S. Kittinger of Lockport," and their tackle and furniture. The "Pettibone" was the subject of an agreement of May 31, 1873, by which the plaintiff agreed to sell it to the defendant upon payment of a sum represented by twelve promissory notes, made by the defendant to the plaintiff, the last one of which was payable November 1, 1875. And, until full payment, title was reserved to the plaintiff, with the right on default to retake the boat. As a further security for the payment of the notes, the defendant gave to the plaintiff a chattel mortgage on the boat "Kittinger." This action is founded upon the alleged default in payment of the moneys so secured. The agreement gave to the defendant the right to take possession of the boat "Pettibone" and use it. This he did. But the sale was conditional. The right of the defendant was to complete the purchase, and take title by payment, and until then the title remained in the plaintiff. This was the situation produced by force of the agreement. (*Strong* v. *Taylor*, 2 Hill, 326; *Bullard* v. *Burgett*, 40 N. Y. 314; *Austin* v. *Dye*, 46 id. 500.) And unless the defendant was in some manner relieved from the effect of such condition, he acquired no title to the boat. His default in payment, would permit the plaintiff to lawfully take the property from the possession of the defendant. It is contended, on the part of the defendant, that the instrument was or became in its nature a chattel mortgage, because it was treated as such in the use made of it by the plaintiff in filing and refiling it, and in subsequently advertising the boat for

sale on taking it from the defendant. It is difficult to see in this any such effect upon the character of the agreement, as its terms clearly and unequivocally characterize it as an executory agreement of sale, and the payment of the purchase-price as a condition precedent to the change of title. It is also urged that such condition was waived by the plaintiff, because he did not avail himself of the default in payment of the last note when it became due in November, 1875, but received payments of the defendant from time to time thereafter, and did not seek to take the boat until in July following, when this action was commenced. While that was a waiver of the forfeiture so far as to permit the defendant to complete his payments and perfect title to the boat, it did not have the effect to take the condition from the agreement or to change its character. But by such waiver that right of the defendant was continued until demand and refusal. (*Hutchings* v. *Munger*, 41 N. Y. 155.) The doctrine of the cases, which go to support the proposition of waiver of a condition in the transfer of property, has relation to the condition upon which delivery of possession is made dependent. (*Hennequin* v. *Sands*, 25 Wend. 640; *Osborn* v. *Gantz*, 60 N. Y. 542.) The defendant alleges payment of the notes. The referee has found that on the 7th day of July, 1876, the amount remaining due from the defendant to the plaintiff was $126.38, and, on the twenty-first day of that month, the plaintiff took from the defendant, without the consent of the latter, four mules and harnesses of the value of $770, and appropriated them to his own use. This action was commenced the next day, and the property in question taken upon the requisition two days after. And the referee further finds that the notes had been fully paid, and that the plaintiff was then indebted to the defendant $643.38, the difference between the value of the mules and harness and the amount due the plaintiff when he took them from the defendant. The plaintiff claims, and evidence on his part was given tending to prove, that there was due him upon the notes upwards of $3,000 at the time of the commencement of the action. The fact, as

found by the referee in that respect, was based solely upon a record of judgment in an action, between the same parties, brought by Hadcock against O'Rourke on or about July 7, 1876, wherein the former alleged payment of the notes, sought an accounting with O'Rourke and the relief that the accounts between them be stated, and that the latter be restrained from taking the property. The issues were referred and the referee found that, on July 7, 1876, there was due from Hadcock to O'Rourke on the notes $126.38, and, as conclusion of law, determined that the latter was entitled to judgment dismissing the complaint. The judgment, thereupon entered, in terms, adjudged that the report be confirmed; that the sum so found was due the defendant therein from the plaintiff upon such notes, and that the complaint be dismissed, with costs. By that record there seems to have been a determination upon the merits of the issues presented by the pleadings, in which was directly involved the inquiry into the state of the accounts between the parties with a view to relief or redemption of the property from the alleged right and claim of the defendant therein, founded upon the agreement of sale and mortgage. As a rule, the consequence of a litigation between the same parties is that, when determined upon the merits, it is conclusive as to all matters within the issues, and that such is the effect of the adjudication upon the same questions in a subsequent action between them, although the form or purpose of it may differ from the former action. (*Jordan* v. *Van Epps*, 85 N. Y. 427; *Pray* v. *Hegeman*, 98 id. 351; *Castle* v. *Noyes*, 14 id. 329; *Smith* v. *Smith*, 79 id. 634; *Leavitt* v. *Wolcott*, 95 id. 212.) It is contended by the plaintiff's counsel that the only question legitimately involved in the issue for determination in the former action was, whether the notes had been paid, and the property thus relieved from the claim of O'Rourke upon it, and that when Hadcock failed to establish such payment it was the only fact for the referee to find, and the conclusion of law that the complaint be dismissed necessarily followed. But we think the issues presented by the

pleadings, and the purpose of the former action, may be deemed to have been broader than that, and to have embraced the inquiry, which was litigated, as to the situation of the claim and amount unpaid upon it. The plaintiff in that action at the time of its commencement, so far as appears, had the right to pay whatever remained due, and perfect his title to the boat "Pettibone" and redeem the other from the operation of the mortgage. If he had tendered to O'Rourke a sum equal to the amount so found due, and the fact had so appeared on the trial of that action, the referee could properly have directed judgment for him. And if the situation had been such as to render it practicable for Hadcock to do so, and relieve the property from the claim, we think he might, for the purpose of payment, have treated the adjudication founded upon such report of the referee as effectually fixing the amount required to perfect and restore his title to the property. This was within the purpose expressed in the complaint. The issues related to the amount paid and unpaid upon the notes, as well as to the alleged fact of payment. In this respect the present action may be distinguished from *Campbell* v. *Consalus* (25 N. Y. 613), where the only question for determination within the issues was, whether the mortgage sought to be canceled had been paid. The considerations of economy, as well as policy, require that repose be given to controversies between parties as to matters within issues, which have been once litigated and legitimately determined upon the merits, while the adjudication remains unreversed and unvacated. Otherwise parties might be subjected to hardship and embarrassment. The doctrine of *res adjudicata* is not, however, applicable to matters merely collateral or incidental to the questions presented by the pleadings and litigated, although they are the subject of controversy on the trial. (*People* v. *Johnson*, 38 N. Y. 63.) The plaintiff in the former action having alleged his readiness to pay any sum found remaining due the defendant therein, the referee could properly have directed judgment, giving leave to the former to pay the amount so found unpaid in satisfaction of the notes. But his omission to do so, inas-

much as the complaint was dismissed on the merits, did not deny legitimate and conclusive effect to the finding of fact within the issues and declared by the judgment. (*People* v. *Smith*, 51 Barb. 360; *Steinbach* v. *Relief Fire Insurance Co.*, 77 N. Y. 498.) And the fact that the dismissal was on the merits is not dependent upon an express declaration to that effect by the referee. It is sufficient that it so appears by the judgment record. (Code Civ. Pro. § 1209; *Van Derlip* v. *Keyser*, 68 N. Y. 443.) Treating, as we do, the former adjudication as determining the amount due the plaintiff herein, the inquiry arises whether such amount was paid. The report of the referee indicates that he treated the taking and appropriating by the plaintiff of the mules and harness as a satisfaction of the plaintiff's claim. It is not seen how the taking and appropriation of that property as represented by the evidence could be given such effect. If the defendant's right to take title to the mules and harness was subject to the same condition as that relating to the boat "Pettibone," the plaintiff may, by reason of the default, have had the right to reclaim them as his property. But it is by no means clear that he had by the agreement reserved the title to that property in himself, or that he had the right to take it. The agreement does not, in terms, apply the condition to the sale of the mules and harness. And, assuming that it was not applicable to them, the title to that property passed on delivery of it to the defendant. Upon that assumption, the plaintiff became liable for the conversion of that property when he took and appropriated it to his own use without the consent of the defendant. But as it does not appear that he disposed of the property or changed its condition, no opportunity seems to have been furnished the defendant to waive the tort and make any claim against the plaintiff in the nature of assumpsit on account of the property so taken. That right arises out of the disposition of the property tortiously taken or converted. And then the party thus deprived of his property may charge the wrong-doer as for money had and received to his use. (*Sturdevant* v. *Water-*

*bury,* 2 Hall, 484; *Cobb* v. *Dows,* 9 Barb. 230; *Berly* v. *Taylor,* 5 Hill, 577; *Osborn* v. *Bell,* 5 Denio, 370; *Jones* v. *Hoar,* 5 Pick. 285; *Cushman* v. *Jewell,* 7 Hun, 525; *Stearns* v. *Dillingham,* 22 Vt. 624; 54 Am. Dec. 88; *Balch* v. v. *Patten,* 45 Me. 41; 71 Am. Dec. 526.) It is not unreasonable to suppose that the doctrine may be so extended as to permit the waiver of the tort and the maintenance of an action as for goods sold and delivered, when the wrong-doer has, by using the property for his own benefit, changed its condition and character as held in *Abbott* v. *Blossom* (66 Barb. 353). But that question does not arise and is not considered here. There is no evidence that the plaintiff did anything with the mules and harness further than to take them into his possession, which he did without the consent of the defendant. Whatever claim the latter appears to have had against the plaintiff for taking that property, was in tort as for trespass or conversion. It is difficult to see that, for the purpose of the question here, the effect, before stated, of taking the mules and harness by the plaintiff was modified by the fact that they, with the boat "Pettibone," were covered by the notice of sale. The taking of them cannot be treated as payment upon the debt unless they were or may be deemed taken as such. There is nothing indicating such purpose on the part of the plaintiff. And, assuming that his purpose, when he caused the notice of sale to be posted, was to sell them, the unaccomplished design to do so did not give to the taking of them the effect of payment. These views lead to the conclusion that it could not be treated as payment or satisfaction of the balance remaining due upon the notes. It follows that, in view of the default in payment, the plaintiff, upon demand and refusal, had the right, at the time of the commencement of this action, to take the boat "Pettibone" by force of the condition in such agreement of sale, or to take the other boat by virtue of the chattel mortgage. But he had no right to take both, because the taking of the former by the plaintiff, as owner, would have the effect to rescind the contract of sale or put an end to it, and this would terminate his

right to seek payment or to avail himself of the security given for it. The plaintiff did at the same time proceed to take both boats. They were taken together upon his requisition in this action July twenty-fourth and delivered to him July twenty-seventh. On July 22, 1876, he advertised them for sale by separate notices, and sold both of them on the twenty-eighth day of that month. The plaintiff had the legal title to the boat "Kittinger," subject to such right as the defendant had of redemption. (*Mattison* v. *Baucus*, 1 N. Y. 295.) And the right of the plaintiff was to take it on the mortgage and publicly sell it on notice by way of foreclosure of the equity of redemption, or not sell it, as he pleased. In case of such sale he could account for the net proceeds. And if he did not sell it, the taking and appropriation would operate to satisfy the claim if its value was sufficient for the purpose. (*Case* v. *Boughton*, 11 Wend. 107; *Charter* v. *Stevens*, 3 Denio, 33; *Coe* v. *Cassidy*, 72 N. Y. 133, 138; *Bragelman* v. *Daue*, 69 id. 69; *West* v. *Crary*, 47 id. 423.)

When the plaintiff by the action and requisition sought to obtain and did take the boat "Pettibone," he was denied the right to the possession of the other boat for the reason before given. I should be inclined to give the defendant the benefit of the recovery of the "Pettibone" and damages for its detention, as that produced the larger amount, if that were practicable. And, as the defendant did not answer the complaint until after the sale of the "Kittinger," it may be that it could have been done on the ground of satisfaction of the debt by such sale, if the time of payment, as alleged in the answer as a defense, and found by the referee, had not been confined to that before the action was commenced. (*Bendit* v. *Annesley*, 42 Barb. 192; *Rice* v. *Childs*, 28 Hun, 303; *Willis* v. *Chipp*, 9 How. 568; *Carpenter* v. *Bell*, 19 Abb. Pr. 258; *Beebe* v. *Dowd*, 22 Barb. 255.) These views lead to the conclusion that the plaintiff was entitled to the possession of the boat "Pettibone," and that the defendant had the right to that of the boat "Kittinger," and to recover it with damages for detention. The value of the property was properly determined as of the time

of the trial. (*Brewster* v. *Silliman*, 38 N. Y. 423 ; *New York Guaranty, etc., Co.* v. *Flynn*, 55 id. 653.) And the value of the use of the boat, adopted as the measure of damages for its detention, was in accordance with the rule in that respect announced in *Allen* v. *Fox* (51 N. Y. 562).

The judgment, therefore, should be reversed and a new trial granted, costs to abide event, unless the defendant stipulate that the judgment entered upon the report of the referee be modified by striking from it so much as awards the return to the defendant of the boat "Pettibone" and damages for its detention, and by inserting a recovery by the plaintiff of the possession of that boat. And in case the defendant so stipulates, the judgment in other respects, and so modified, be affirmed, without costs of this appeal to either party.

All concur with FOLLETT, Ch. J., except BRADLEY, J., dissenting, and HAIGHT, J., not voting.

Judgment affirmed.