for him to perform it, and he has performed it so far as it required him to dispose of the land. Equity approves his performance, so far as he has performed, and, as the statutes referred to no longer apply, there is no law which he can invoke to shield him from the full performance of his duty." Pages 284, 285, 132 N. Y., and page 584, 30 N. E.

The exigencies of the present case do not require the application of the extreme doctrine enunciated in that case. There, indeed, the court held that the disposition of the property was an execution of the trust, even when the alleged trustee ex maleficio insisted that the property was his own, and that the sale was for his own sole use and benefit. Here we have the reverse of this assertion. Here the trustee's legal representatives recognized the trust, and executed it loyally. They had a right to thus recognize it, and they have only done their duty in its execution.

The trust, therefore, having been fairly and frankly executed, and the proceeds of its execution being in the hands of the defendants for distribution, such distribution was properly decreed. It follows, upon both grounds, that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN and INGRAHAM, JJ., concur. RUMSEY, J., concurs in result.

---

### EARLE v. GORHAM MANUF'G CO. et al.

(Supreme Court, Appellate Division, First Department. March 13, 1896.)

1. CHATTEL MORTGAGES—AUTHORITY FOR SALE—DEFAULT.
   The provision in a chattel mortgage authorizing a sale on default read: "And the said party of the first part covenants * * * that, in case default shall be made in the payment of the said sum above mentioned,. then," etc. The clause in which "said sum" was mentioned read: "Upon condition that if the said party of the first part shall * * * pay * * * the following notes [then followed the description of three notes, due at different times, the amount of each being specified, with the total of such amounts given], then these presents shall be void." *Held,* that there could not be a sale on default in payment of a single note, but only in case of default when the last note became due; the sum referred to in the sale clause being the total sum of the notes.

2. SAME—WAIVER OF DEFAULT.
   Though the sale clause in a chattel mortgage be construed as authorizing sale on default in any of the notes secured, forfeiture is waived, and the original statutes under the mortgage restored, by the mortgagee's accepting payment of the note.

3. INJUNCTION—REMEDY AT LAW.
   Where a mortgagee has taken possession of the mortgaged chattels, the silverware of an hotel, in violation of the covenant for quiet and peaceable possession by the mortgagor till default, injunction to compel restoration will lie, because of inadequacy of remedy at law, and to prevent multiplicity of suits.

4. EXECUTION SALE—PRESENCE OF PROPERTY.
   The law requiring property sold under execution to be open to the inspection of the bidders is sufficiently complied with where, on a sale, in the rotunda of an hotel, of the silverware of the hotel, part of it was on a table in an adjoining room, and the remainder in the storeroom downstairs, both rooms being unlocked and open to the public.

5. INJUNCTION—DAMAGES—INTEREST.
    In an action for injunction to obtain possession of chattels wrongfully
taken by defendant, plaintiff may recover as damages interest on their
value for time of detention, no evidence as to the value of their use being
given.

6. SAME—VALUE OF PROPERTY.
    It appearing in such action that the property consisted of silverware
purchased from defendant, about a year before his wrongful taking, for
$37,500; that half of it was unused; that such ware, with ordinary use,
would last 15 years; and defendant having testified that $34,000 worth
was taken,—$34,000 will, in the absence of any other testimony, be taken
as the value on which to compute interest as damages for detention.

7. APPEAL—AMENDING PRAYER AND JUDGMENT.
    In aid of the power given by Code Civ. Proc. § 1022, to a court on ap-
peal from a judgment rendered on a decision which does not state sep-
arately the facts found to grant the judgment which the facts warrant,
the court may direct amendment of the prayer of the complaint, increas-
ing the amount for which judgment is demanded to a sum equal to the
damages shown.

    Van Brunt, P. J., and Rumsey, J., dissenting.

Appeal from special term, New York county.

Action by Lillie J. Earle against the Gorham Manufacturing Com-
pany, and George H. Robinson, as trustee, for injunction. From a
judgment for plaintiff, defendants appeal; and, from the refusal to
award damages in addition to the injunction, plaintiff appeals. Af-
firmed on defendants' appeal. Modified on plaintiff's appeal.

In and prior to August, 1893, Ferdinand P. Earle was lessee of the Hotel
New Netherland and the Hotel Normandie, in the city of New York. Prior
to August 3, 1893, he bought certain silverware of the defendant Gorham
Manufacturing Company, gave his notes therefor, amounting to over $35,000,
and on said date executed a mortgage on said silverware as security for their
payment. Thereafter more silverware was purchased by Mr. Earle from the
defendant company, to the amount of about $3,500. In January, 1894, an
agreement was entered into by Mr. Earle, the defendant company, and two
other corporations, creditors of the former, whereby, among other things, a
series of notes was given to replace those then held by the defendant com-
pany, and to cover the price of the silver subsequently bought and interest
accrued. Notes were also given to the other corporations, representing exist-
ing indebtedness; and the whole was secured by a mortgage, executed to the
defendant Robinson as trustee, of the lease of the Hotel Normandie and all
property, of every nature, in said hotel, more particularly set forth in a
schedule annexed. In case of default in the payment of any of the notes,
and the continuance thereof for 30 days, authority was given to the mortgagee
to sell the mortgaged property, pay all the notes, with costs and expenses,
and return the overplus, if any, to the mortgagor. This mortgage did not
cover the silverware, but there was a provision therein "that none of the
present security now held by said three corporations, or either of them, is to
be changed in any respect; but that this extension of the term of payment is
in consideration of the payment of one ($1) dollar, and the giving of this
mortgage as further collateral security thereto." In March, 1894, all Mr.
Earle's right, title, and interest in and to the mortgaged silverware was sold
on execution, together with other property, to the plaintiff. The first of the
new notes payable to the defendant company fell due on April 5, 1894. On
this date a balance was due thereon, and the company, on April 6th, took
possession by a city marshal of all the silverware covered by the mortgage
which was then in the Hotel New Netherland, being $34,000 worth or over.
On April 23d, Mr. Earle paid the balance due upon the note of April 5th, and
it was surrendered to him. There is a conflict of testimony as to what oc-
curred between Mr. Earle and the representative of the company when this
note was paid. The former states that the company agreed to relinquish pos-

session of the silverware, which the latter denies. Since this time all notes have been paid to the defendant company as they fell due, the payments amounting to about $14,000. After the payment on April 23d, the attorney for the defendant company demanded either that Mr. Earle or the plaintiff redeem the silverware by paying in full the debt to the company, or deliver to the marshal a certain portion thereof, which had been removed from the Hotel New Netherland before he took possession. This was not done, and on May 18th a sale of the silverware was advertised for May 26th. On May 23d a temporary injunction order against the sale was granted, which was continued during the pendency of the action by order made June 7, 1894. The judgment appealed from enjoins the defendants (appellants), their agents or servants, from interfering or intermeddling with the plaintiff in the possession of the silverware covered by the mortgage of August 3, 1893, or selling, assigning, transferring, or incumbering the same, until default in the payment of some one of the notes set forth in the mortgage dated January 2, 1894.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

George M. Pinney, Jr., for appellants.

A. J. Dittenhoefer and David Gerber, for appellee.

BARRETT, J.   The defendant company has proceeded throughout upon an erroneous view of its rights.   There never was a forfeiture under its silverware mortgage.   That mortgage was entirely independent of the Normandie mortgage.   The principal relation which the latter bore to the former was that it extended the original terms of payment.   It did not alter any of the other provisions or conditions of the silverware mortgage.   On the contrary, it provided that that security was not to be changed in any respect, and that the extension of the terms of payment granted by the new mortgage was in consideration of the further collateral security which that new mortgage furnished.   The new notes specified in the Normandie mortgage were substituted for the old notes specified in the silverware mortgage.   The understanding was that the old notes should remain in the company's possession, but should not be negotiated; and, when all the new notes were paid, the old notes were to be canceled.   It will be observed, however, that the new notes aggregated some $3,500 more than the old.   This was because the company had delivered additional silverware to the extent in value of about $3,500 between the time when the silverware mortgage was given and the time of the execution of the Normandie mortgage. Thus, this additional silverware was not covered by either mortgage, while the silverware actually covered by the original mortgage was charged with the payment of some $3,500 more than the sum with which it had previously been charged.   The defendant company contends that there was a forfeiture under the silverware mortgage the moment the mortgagor failed to pay at maturity any one of the notes given upon the execution of the Normandie mortgage.   It admits that this forfeiture did not result from the breach of any of the terms or conditions of the Normandie mortgage.   This admission was compelled by the seventh condition of the Normandie mortgage, which expressly postponed forfeiture thereunder for 30 days after default in the payment of any of the new notes; it being conceded that the

note upon which the present forfeiture is claimed was fully paid before the expiration of these 30 days. The hard doctrine which the defendant company invokes is that these 30 days of grace only apply to the forfeiture of the additional collateral security furnished by the new or Normandie mortgage. Upon this it is contended that as the security of the old mortgage was not to be changed in any respect, and as the 30-day clause is not to be found therein, there was a forfeiture thereunder the moment 'a default occurred in the payment at maturity of any one of the new notes. There is nothing in the original mortgage to justify this contention. It was the clear intention of the parties when the Normandie mortgage was given to limit ad interim forfeiture to the additional collateral security thereby furnished. That was deemed sufficient without disturbing the original security, or impressing upon it an ad interim foreclosure clause. If this was not the understanding of the parties, it is difficult to account for the plain and precise provision on this head inserted in the Normandie mortgage, and the entire absence of any such provision in the silverware mortgage. It may be argued that the parties originally acted upon the theory that the law itself ingrafted such an ad interim forfeiture and foreclosure clause upon the silverware mortgage. The draftsman's phraseology, however, precludes any such theory or idea. The provision authorizing a sale upon default reads in this wise:

"And the said party of the first part covenants and agrees to and with the party of the second part that, in case default shall be made in the payment *of the said sum above mentioned*, then," etc.

To aid the company in effecting an unconscionable forfeiture, we are asked to give these italicized words a most elastic, strained, and unreasonable construction. What is the said sum above mentioned? The clause in which this sum is mentioned reads as follows:

"Upon condition that if the said party of the first part shall and do well and truly pay unto the said party of the second part, their executors, administrators, or assigns, the following promissory notes, tc wit:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Note dated N. Y., June 1, 1893, at | 6 mos., for | $11,694 30 |
| "    "    "    "    "    " 9    "    " | | 11,694 32 |
| "    "    "    "    "    " 12    "    " | | 11,694 33 |

$35,082 95

—then these presents shall be void."

There are several sums here mentioned, and there is one total sum. The sum referred to in the "sale" clause is clearly that total sum. The defendant would have us construe the sale clause as though it read "the said sum, or any of the said sums, above mentioned." We cannot insert these additional words in aid of a forfeiture. Nor does the context admit of any such amplification. The words "the said sum above mentioned" are again used later on in the same "sale" clause. We cannot well give them there a different meaning. Should we give them the same meaning as the defendants ask us to give them when reading the earlier part of the clause, let us see what would result. Under the earlier phrase, construed to read "upon default in the payment of the said sum, or any of the said sums, above mentioned," the defendants are authorized to sell and dispose of "the said goods or chattels,"—all of them,—and, out of the money

arising therefrom, to retain and pay "the said sum above mentioned" (precisely the same words, it will be observed), and all charges touching the same; rendering the overplus, if any, unto the mortgagor. Now, if the "said sum above mentioned" means any one of the said sums above mentioned, then it is only the one of such sums as to which there is a default which can be "retained and paid." The entire overplus must be "rendered" to the mortgagor. Surely, the parties did not mean that. The defendants scarcely desire a construction which would involve foreclosure and sale to pay an installment, and the loss of the security as to the residue. But, if they did not mean that in the later use of the words, they did not mean it in the earlier. They cannot mean one thing in the one connection and another thing in the other. "The said sum above mentioned" was not the sum due on the first unpaid note in the default connection, and the totality of the debt in the sale and payment connection. It is plain that it meant the total sum in both connections.

But this is not all. The words in question occur again in the quiet and peaceable possession clause. Here it is provided that, "until default be made in the payment of the said sum of money, the mortgagor is to remain and continue in the quiet and peaceable possession of the said goods and chattels, and the full enjoyment of the same." There is not a break in the entire condition from the quotation above unto the end. The covenants as to default and peaceable enjoyment follow the formal condition directly, and are part and parcel thereof. They must all be read together. So reading them, the condition is not broken until default is made in the payment of the entire sum specified therein. Thus, it is upon default in the payment of the entire sum, namely, the sum of $35,082.95, therein "above mentioned," that the title becomes absolute. It is upon that default, and that alone, that the right to seize and sell the property becomes absolute; and it is upon that default, and that alone, that the mortgagor loses his right to remain and continue in quiet and peaceable possession. This construction is in harmony with the condition proper, and with every one of the sequences which follow. Any other construction would be incongruous and vacillating, and would require the court really to reframe the conditions so as to mature the entire debt upon the nonpayment of any one of the notes.

The rule that, where a mortgage is payable in installments, the mortgagor cannot redeem without paying the whole debt, is, of course, inapplicable. The right to foreclose was, by the express terms of the mortgage, limited to default in the payment of the whole debt. Thus, the operation which the law might otherwise have given to the naked condition (as suggested by the learned referee in Leadbetter v. Leadbetter [Sup.] 11 N. Y. Supp. 228, and in Bragelman v. Daue, 69 N. Y. 74) is varied by the provisions of the contract itself. As there was no forfeiture, there was nothing to redeem. The mortgagee has simply taken possession unlawfully. Indeed, the installment rule has almost invariably been laid down in cases where, by the terms of the mortgage, the right to foreclose is expressly granted upon default in the payment of any part of the debt. Such was the fact in the extreme case Halstead v. Swartz, 46 How. Prac. 291. The

condition there was that the plaintiff should pay the notes "as they became due"; but, in case of nonpayment "at the time or times above mentioned," then the defendant was authorized to seize and sell. So, in Leadbetter v. Leadbetter, 125 N. Y. 292, 26 N. E. 265, affirming 11 N. Y. Supp. 228, the condition was, as said by O'Brien, J., "that the defendant should pay the notes as they became due, and that, in case of default in the payment of the notes or any of them when due," then the said sum of $3,000 (the entire debt) should become due instantly, and the mortgagee or his assigns should have the right to take possession, etc. It follows that, whether the default clause in the silver-ware mortgage or that of the Normandie mortgage governs, there was no forfeiture, and the defendants have acted unjustifiably throughout.

But, even if there had been a forfeiture, it was distinctly waived. This is not an action to redeem the property. Such an action is to relieve from a forfeiture. There the mortgagor must pay or tender the whole debt before bill filed. This action, however, proceeds upon the theory that there is no forfeiture to be relieved from, and consequently nothing to be redeemed. The claim is that, by the waiver, forfeiture, if any, was completely wiped out; that it then became nonexistent; that, consequently, the original status was restored; and that now the rights of the parties are precisely the same as though the forfeiture had never been. The question which runs through the cases on this head is whether a tender of the whole amount due after forfeiture is sufficient in law to effect such a waiver. The current of authority favors the conclusion that such a tender is insufficient to create a waiver. It is, undoubtedly, sufficient upon a bill to redeem. But, to create a waiver, there must be an acceptance by the mortgagee. The latter is not bound to accept the amount due, and restore the property. He may insist upon his forfeiture, and leave the mortgagor to his bill to redeem. On the other hand, he may waive his right of forfeiture, and he does so upon acceptance of the tender. Hutchings v. Munger, 41 N. Y. 158; Van Loan v. Willis, 13 Daly, 281; Patchin v. Pierce, 12 Wend. 61; O'Rourke v. Hadcock, 114 N. Y. 550, 22 N. E. 33. Where the forfeiture results from the nonpayment of an installment, the mortgagor cannot redeem without a tender of the whole amount of the mortgage debt. A tender of the unpaid installment is insufficient either for redemption or to effect a waiver. To redeem, there must be a tender of the whole debt. To effect a revesting of the title at law, there must be a tender and acceptance of the whole debt. But, to effect a waiver of the forfeiture and the revesting of the original status under the mortgage, there need only be a tender and acceptance of the unpaid installment. The only case we have been able to find which militates against the latter doctrine is Patchin v. Pierce, 12 Wend. 61. There, however, the court was dealing with the title at law. What the court really held was that the acceptance of a part of the money secured by the mortgage does not operate to reinvest the title in the mortgagor, so as to enable him to recover at law. It was assumed that the waiver of the forfeiture could produce no

other result; and Nelson, J., reasoned that, as that particular result did not follow, there was no waiver. The reasoning overlooked the other result which does follow the waiver, namely, the right in equity to a restoration of the original status under the mortgage. This latter view is clearly outlined in the later cases which have been cited. Thus, in Hutchings v. Munger, supra, where, even upon a conditional sale, the entire amount of the purchase money had become due and was unpaid, a part payment was held to effect a waiver of the forfeiture. "This," said Grover, J., "was an assent by the defendant to the delay, and a waiver of the forfeiture. It was a recognition of the contract as still in force, and of the right of the plaintiff to acquire title to the boat by payment of the residue of the purchase money in the future." This case was followed in O'Rourke v. Hadcock, supra. Even in the dissenting opinion in the latter case, Bradley, J., conceded, upon the authority of Hutchings v. Munger, that the receipt of part payment operated as a waiver of the forfeiture so far as to permit the defendant to complete his payments, and perfect title to the boat. The rule is broadly stated in Jones on Chattel Mortgages, that "acceptance of part payment of the mortgage debt after the expiration of the time allowed by statute for redemption is a waiver of the forfeiture"; citing, in support of the rule, Winchester v. Ball, 54 Me. 558, Flanders v. Barstow, 18 Me. 357, and Thompson v. Moore, 36 Me. 47. Our conclusion is that, while the acceptance by the mortgagee of an unpaid installment does not of itself effect the vesting of an absolute legal title in the mortgagor, it does effect a waiver of the forfeiture, and is a recognition of the mortgage, with all its terms and conditions, as still in force. The forfeiture is obliterated, and the original status restored. The legal, but defeasible, title, is continued in the mortgagee, and the right to quiet and peaceable possession is continued in the mortgagor; and the latter right can only be enforced in equity.

The plaintiff, however, does not rely wholly upon the legal effect of the defendants' acceptance of payment of the only note as to which there was a claim of default. When that note was paid, the defendants distinctly recognized the plaintiff's equity. The court below would have been quite justified in specially finding (had the decision been made in the old way) that Mr. Robinson then acceded to Mr. Earle's position, which was that he supposed, of course, he could now take possession of the silverware; that Mr. Robinson said that it was all right; and that, as he (Earle) had paid the note, there was no objection to his taking the silver away. This was further recognized when the defendants accepted payment of the second note. It appeared, too, that every note which had matured prior to the trial had been promptly paid. These amounted in all to more than one-third of the entire purchase price. A more complete waiver, both at law and in fact, it would be difficult to conceive of.

In the view which we have last taken of this case, there can be no doubt of the plaintiff's right to appeal to a court of equity. She had, in fact, no other right. But even in our original view, that there never was a forfeiture, there was still an undoubted right to

equitable relief. What the plaintiff seeks is not a specific performance of a contract for the sale of chattels, but a specific performance of the covenant for peaceable possession and quiet enjoyment. Here the contract of sale was executed, and the goods were delivered. The mortgage was given to secure to the mortgagee the purchase price of the goods, and the covenant was given to secure to the mortgagor continuous possession until default. Damages for the breach of such a covenant would be a most incomplete and unsatisfactory remedy. The measure of damages would be the value of the right of possession until forfeiture by breach of the condition of the mortgage, and the value of the property after payment of the mortgage debt. Jones, Chat. Mortg. § 437, and cases cited. It would be practically impossible for the plaintiff here to prove the value of the right of possession. That would involve the value of the use of the property for hotel purposes. The deprivation of that special use goes to the very root of the transaction. The property was purchased and designed with reference to that special use in a new and important hotel establishment. The particular hotel for which it was purchased has been lost to the vendor by other causes, but the use in other hotel directions is equally essential. The silverware was especially adapted to hotel purposes. It was marked in two or three different ways. Part of it was marked "Hotel New Netherland," part with an initial "N," and part with a monogram or coat of arms. There were also designs "gotten up expressly" for Mr. Earle's use.

Nor would replevin afford an adequate remedy. The defendant could frustrate the possessory power of this remedy by the simple process of rebonding. The effect would be to keep the plaintiff out of the possessory use pending the litigation. Meanwhile the property might be sold. In the end, whether the property was sold or not, the plaintiff would be face to face with the original problem, namely, how to prove the value of the right of possession. He might recover the property in specie, or, if it had been sold, its value. But still he would be without adequate redress for the detention and for the loss of his possessory right. The breach of such a covenant might be far-reaching. If extended to the furniture, carpets, linen, glass, and chinaware of the hotel establishment, it would almost certainly work downright ruin. Even the sudden deprivation of any one of the various properties which make up the essential plant of such an establishment would jeopardize the entire business. It is clear that the case for equitable relief is, upon the special facts, brought within the principles stated in Cushman v. Jewelry Co., 76 N. Y. 369; Johnson v. Brooks, 93 N. Y. 343; Bennett v. Wright, 77 Hun, 331, 28 N. Y. Supp. 453; Ford v. Ransom, 8 Abb. Prac. (N. S.) 416; and Sickels v. Combs, 10 Misc. Rep. 552, 32 N. Y. Supp. 181.

There is, however, still another consideration, which amply supports the equitable remedy. The covenant for quiet and peaceable possession until default was a continuing covenant. There is a daily breach while the defendants keep the plaintiff out of possession. This would lead to a multiplicity of suits, to prevent which a court of equity may properly exercise its jurisdiction. The governing principle is the same as where a lessee covenants to occupy demised

premises for a particular purpose, and none other.    There an injunction lies to restrain a deviation.    Steward v. Winters, 4 Sandf. Ch. 587.    In the latter case the vice chancellor said it was unnecessary for the complainant to establish irreparable injury, "or on a continuing covenant" even substantial injury.    Then, too, equity should act reciprocally.    It protects the mortgagee's rights, for it will not permit the mortgagor to sell, and place beyond the reach of the mortgagee, chattels covered by the mortgage.    It will equally protect the mortgagor's rights.    It will not permit the mortgagee to deprive him of the continuous use pending payment in due course, upon which the whole transaction hinged.

The only other point made by the appellants is that the plaintiff failed to secure title at the sheriff's sale, for the reason that the silverware was not then actually present and exposed to the bidder's view.    The property was sold in the rotunda, or lobby, of the hotel. A large part of the silverware was in an adjoining room, opening out of the rotunda.    It was exposed upon a large table, and the door of the room was not closed.    The property was about 20 feet away. Some of it was in the storeroom downstairs, a room which was kept locked only at night.    There was, under the circumstances, a sufficient compliance with the law which requires property sold under execution to be open to the inspection of bidders.    It would have been impracticable to displace all the furniture and property in the hotel, and pile it up in the rotunda.    The rooms were open to the public, and any one could have examined the property.    The sale was valid, upon the principle enunciated in Tifft v. Barton, 4 Denio, 171, and Bank v. Sprague, 20 N. J. Eq. 159.    It may be added that the defendant in the execution was present at the sale, and made no objection.    Since then he has fully recognized the plaintiff's title, and has acted for her in her relations to the property.

The remaining question is upon the plaintiff's appeal.    The learned trial judge refused to grant the plaintiff any compensation for the deprivation of her possessory right.    In this, we think, he erred.    It is true that there was no evidence of the value of the use of the silverware.    In the nature of things, there could be no such evidence. Indeed, the difficulty of proving the value of possession is, as we have seen, one of the reasons why equity affords relief.    We think, however, that there was still a measure of compensation which should have been awarded to the plaintiff.    This was in the nature of a possessory action.    The damages which might have been awarded on replevin are therefore appropriate here.    It is true that the judgment below was not (like a replevin judgment) in the alternative for the return of the property, or its value if not returned.    The judgment here is limited to the return of the property.    Such is the effect of the mandatory injunction.    If, however, the value of the property sufficiently appears in the record, there can be no difficulty in awarding interest upon this value in lieu of damages.    The rule is that, if damages by way of compensation for use are recovered, there can be no recovery of interest.    Sedg. Dam. § 538.    But where the value of the use cannot be recovered, because it has not been proved, the damage suffered by the detention of the property is measured by the inter-

est on its value. "The presumption," says Mr. Sedgwick, "is that damages for detention are to be so measured," for which proposition he cites Indemnity Co. v. Flynn, 55 N. Y. 653. It was distinctly held in this case that, in the absence of any proof that the damages are more or less than the interest on the value, the presumption is that the damages are the interest during the time that the successful party was wrongfully deprived of the use. This rule is especially applicable to a case like the present, where the party wronged is actually paying interest to the wrongdoer upon the notes which represent the value of the property. He is actually paying this interest (at 3 and 4 per cent.) during the entire period of the wrongful deprivation of the use. Thus, the wrongdoer keeps both possession and interest, while the party wronged is deprived of both.

The question, then, is one of fact: Does the case show the value of the property, and, if so, what value? We agree with the defendants that the true value of the property when taken by them was not its original purchase price. But that original purchase price is an element for consideration in connection with the natural depreciation from use. The purchase price of the property covered by the mortgage was $35,082.95. But, as we have seen, some $3,500 worth of additional silverware was subsequently added thereto. The new notes covered this additional $3,500, together with interest upon the original $35,082.95. The grand total was $39,483.13, and for this latter sum the new notes were given. The defendants thus took property the purchase price of which aggregated some $38,500. In their answer, the defendants admit that they took possession of all the goods "covered by and included in" the chattel mortgage, "save and excepting certain of said goods and chattels, of the value of $1,083.58 or thereabouts," which they claim were missing. There was no claim in the answer that any other goods were missing. The answer was verified by the defendant Robinson. This sworn answer was in precise accord with a previous demand for missing goods of the value of $1,083.58. In fact, the defendant company's attorney wrote to Mr. Earle on the 17th of April, 1894, inclosing an inventory of the missing goods, "valued at $1,083.58," and demanded their return. It would seem, therefore, that the purchase price of the goods actually taken must have been some $37,500. One-half of it was unused, and therefore nearly as good as new. The depreciation of the other one-half was not great, for Mr. Earle testified without contradiction that such silverware with ordinary use would last 15 years. Mr. Robinson himself testified that the defendants "got back about $34,000 worth of silverware, according to the inventory." This testimony is quite conclusive. There is not a suggestion that Mr. Robinson here referred to the original purchase price of the property. It is true that he insisted (notwithstanding the suggestion of his counsel that he was in error, as he clearly was) that the value of the missing silverware was $5,000, and that the total silverware sold to Mr. Earle was about $39,000. Upon this variation from the real fact, as such fact was stated in his answer and in the demand to which reference has been made, he may have predicated his estimate of the value of the property taken; that is, he may have mentally deducted this

$5,000 from the $39,000, and put the difference as the "worth" of the silverware which the defendants took.      That, however, is but a possibility, and we see no reason for speculating away the probative force of the wrongdoer's evidential admission.      Whatever may have been his process of reasoning, the fact remains that he testified—certainly against interest—that the defendants "got back about $34,000 worth of silverware."      They, undoubtedly, got back silverware the purchase price of which was from $37,500 to $38,000.      Thus, the defendants themselves fixed the measure of depreciation,—a measure which is entirely consistent with the nonuse of one-half of the property, and the slight use of the remainder.      The conclusion that Mr. Robinson referred to actual value, not mere purchase price, is accentuated by the context.      He speaks of value in the answer when referring to the missing goods.      This is repeated at the foot of the demand in these words: "List of missing property valued at $1,083.58."      And in his testimony he says: "I know the whole value of the silverware we did not get back was about $5,000."

It is entirely reasonable and consistent, therefore, to place the value of the property taken by the defendants at the sum of $34,000. This is probably less than its real value, but it is, at least, a fixed sum, of which the defendants cannot well complain.      The judgment should therefore be modified by allowing the plaintiff interest upon the sum of $34,000 from April 6, 1894, which was the date of the seizure.      As the judgment was not in the alternative, and as interest will not consequently run upon the ascertained value from the date of the judgment, such interest should be allowed as damages down to the time of the actual return of the property.      We are not informed whether the property was actually returned upon the entry of the judgment appealed from, or whether the execution of that judgment was stayed upon this appeal.      If the property was returned, then the interest should be allowed down to the trial.      If it has been retained pending this appeal, it should be allowed down to the date of our judgment.      The amount can be liquidated in accordance with the facts upon the settlement of the order or judgment upon the decision of this appeal.      The prayer for judgment will be amended to effect this purpose.      To sustain a just recovery of damages in excess of a lesser amount inadvertently demanded in the complaint, the court, on appeal, may direct an amendment. Schultz v. Railroad Co., 89 N. Y. 247.      But we may act in this regard as the trial court could have acted.      This appeal is from a judgment rendered upon a decision which does not state separately the facts found.      In such cases the appellate court may grant to the plaintiff the judgment which the facts warrant.      Code Civ. Proc. § 1022.      We thus act upon the record with substantially the same effect as the trial court.      Finding, as we do, that the facts warrant a judgment in the plaintiff's favor for the interest damages, we necessarily, in aid of the power to grant such a judgment, have the same authority as the trial court to direct an amendment increasing the amount for which judgment is demanded to a sum equal to such interest damages; and there can be no doubt of the authority of the trial court.      Knapp v. Roche, 62 N. Y. 614.

The judgment appealed from by the defendants should be affirmed, with costs. The judgment so far as appealed from by the plaintiff should be modified by granting her the additional relief indicated in this opinion.

O'BRIEN and INGRAHAM, JJ., concur.

VAN BRUNT, P. J., and RUMSEY, J.   We concur in the affirmance of the judgment on the defendants' appeal.   We dissent from the modification on the plaintiff's appeal.