(58 App. Div. 179.)

## PFEFFER v. KLING et al.

(Supreme Court, Appellate Division, First Department.   February 15, 1901.)

1. EJECTMENT—TITLE—EXECUTION SALE—EQUITY OF REDEMPTION—PURCHASER —FAILURE TO REDEEM.

Where property of a judgment debtor was sold on execution to a purchaser who assigned the sheriff's certificate of sale therefor to the debtor's husband, who assigned it to plaintiff, to whom the sheriff's deed issued and was duly recorded, one who purchased the rights of the judgment debtor and her grantee at a sale by a receiver appointed in an action against them subsequent to the execution sale, but before the sheriff's deed thereunder, but did not redeem the premises from the first sale within the time allowed by law (plaintiff's rights thereby ripening into a good title), did not have a title or claim superior to that of plaintiff, since he only succeeded to the judgment debtor's right to redeem.

2. JUDGMENT—RES ADJUDICATA.

Where, in a special proceeding against a judgment debtor, a receiver was appointed, who sold property of the debtor, an order denying his motion to set aside such sale, at which motion neither the purchaser, a subsequent grantee, nor another receiver was present, was not res adjudicata as to the debtor in a subsequent action of ejectment by him against such grantee and the receiver, since such order was not binding on them.

3. EJECTMENT—EVIDENCE—DECLARATIONS OF FORMER OWNER—ADMISSIBILITY.

Where property of a judgment debtor was sold on execution to a purchaser who assigned the certificate of sale to the husband of the debtor, who in turn assigned it to plaintiff, to whom the sheriff's deed issued, statements of the purchaser as to his title on the day of his purchase are not admissible to show that plaintiff in ejectment against the purchaser of the debtor's equity of redemption and a receiver appointed in a creditor's proceeding against the debtor held the property in the interest of the judgment debtor and her subsequent grantee, as declarations of a former owner are not evidence against a subsequent grantee.

4. DECLARATIONS TO ATTORNEY—EVIDENCE—ADMISSIBILITY.

Statements as to his title made by plaintiff to an attorney acting nominally for him are not admissible against him, as privileged communications, under Code Civ. Proc. § 835.

5. RESULTING TRUSTS—EVIDENCE—WHO MAY ESTABLISH—CREDITOR.

Statements made by plaintiff as to his interest in the property are not admissible in favor of defendant in ejectment to show that plaintiff held the title for the judgment debtor and her grantee, and thus establish a resulting trust, since defendant was not a creditor of such persons, and it was not shown that the judgment under which he claimed remained unpaid.

6. RECEIVERS—RENTS—ORDER OF COURT—EJECTMENT—DAMAGES—LIABILITY.

Where a receiver of property collected rents, and, in accordance with the order confirming his sale of the property, paid the balance of the rent, after paying expenses, to the attorney for the defendant in the creditor's action in which he was appointed, he is not liable for damages for such rents, either personally or as receiver, in ejectment by the owner against him and one claiming the property by virtue of the receiver's sale.

7. EJECTMENT—DAMAGES—PLEADING—PRAYER—NECESSITY—AMENDMENT.

Where, in ejectment, the complaint did not demand special damages against defendant, it was error to allow the rental value of the premises as damages in a large amount, and the prayer of the complaint could not be amended to allow such recovery.

Appeal from trial term, New York county.

Ejectment by Norbeth Pfeffer against Philip Kling and Thomas D. Husted, as receiver, and others.   From a judgment in favor of plaintiff, defendants appeal.   Modified.

68 N.Y.S.—41

The action is in ejectment. The complaint alleges that the defendant Kling claims title to the property, which is located at 206 Forsyth street, and that the defendant Husted, as receiver, had collected $700 in rents. Judgment was asked for possession, for $700 "as the value of the use and occupation," and for other relief. The plaintiff's record title to the property, which was originally owned by Rebecca Weisel, was established through an execution sale on November 22, 1894, to Charles Smith, and a sheriff's deed thereafter given on March 5, 1897. Smith assigned the certificate of sale on November 23, 1894, to Chaim Weisel, and on December 9, 1894, it was recorded. On March 2, 1897, the certificate was assigned by Weisel to the plaintiff, and recorded the same day; and the sheriff's deed to plaintiff was recorded on March 15, 1897. The alleged title of the defendant Kling rests upon two distinct claims. The first is that on October 5, 1895, Rebecca Weisel gave a deed to Joseph Weisel, thereby conveying her right to redeem the premises from the sheriff's sale of 1894 to Smith, and that thereafter, pursuant to a decree made February 25, 1897, in an action wherein one Wright was plaintiff and Rebecca Weisel and Joseph Weisel were defendants, Thomas D. Husted (defendant herein), as receiver, on April 26, 1897, sold the rights of Rebecca Weisel and Joseph Weisel in the premises to Philip Kling, and a deed thereof was executed to him May 1, 1898. The second claim of title is that as the result of special proceedings in an action brought by one Jacob Wolf against the plaintiff, Pfeffer, and Abraham Lent, William E. Wyatt was appointed receiver of the plaintiff's (Pfeffer's) property, and as such receiver sold the plaintiff's interest in the premises on February 23, 1899, to Louis M. Seaver, and on March 7, 1899, gave a deed therefor, which was recorded the following day, and that thereafter Seaver and his wife conveyed the property to the defendant Kling by deed recorded March 23, 1899. As an additional defense, the defendant Kling alleged that the premises in question are held by the plaintiff for and on account of the said Rebecca Weisel and Joseph Weisel, and they, for the purpose of hindering and defrauding creditors, conspired to have the sheriff's deed made to the plaintiff to keep the premises in the control of Rebecca Weisel. The defendant Husted answered, admitting that he was a duly-appointed receiver, and as such collected rents, and had sold the premises; and he stated that he was in possession when the action was brought, for the reason that the closing of the title had been adjourned. Upon the trial the various transactions alleged affecting the real estate as to judgments and sales were proved, and it was admitted that the property was worth $30,000 and that the rental value was $2,900; and it appeared that the property was sold to Smith for $110, which was the price paid by the plaintiff. Chaim Weisel, or Hyman Weisel, was the husband of Rebecca Weisel, and Joseph Weisel was her stepson. The defendant Kling placed in evidence an order to show cause procured by the plaintiff, asking that the sale by William E. Wyatt as receiver be set aside, and an order dated April 18, 1889, denying the application on the merits. There was also introduced in evidence an order confirming the sale by Husted as receiver, showing that he had paid out the balance of the rents collected to the attorneys in the action in which he was appointed. Henry J. Golden testified for the defendants that he was an attorney, and after 1897 acted as such for Charles Smith, and that he had a conversation with Smith on the day he purchased the property in 1894. Objection was made to the witness stating such conversation, which objection was sustained and exception taken. Thereafter similar questions were ruled out,—such as whether Smith said he had bought the property for the benefit of Rebecca Weisel,—and exceptions were taken. Benjamin Reass, a lawyer, testified that he had acted for the plaintiff "nominally" in 1897, but was not employed by him. Objections were made to his stating what conversation he then had with the plaintiff as to the transfer of the property, whether the plaintiff had paid for the transfer, and what the circumstances were; and these were sustained, and exceptions taken. Charles H. Smith, a lawyer and a notary, testified that he took Smith's acknowledgment on November 23, 1894, and talked with him as to how it should be done, but was not allowed to state whether he held any relation professionally with him, or what Smith had said, and exceptions were taken. William Fox, a liquor dealer, testified that he had had a conversation with the plaintiff in 1897 in

reference to the premises in dispute; but he was not permitted to say what such conversation was, nor whether the plaintiff said that he was holding the property for the benefit of Rebecca Weisel. The court directed a verdict in favor of the plaintiff, as owner and entitled to possession of the premises, and entitled to recover from the defendant Husted rents collected from April, 1897, to May 15, 1897, amounting to $394, with interest, and damages against the defendant Kling for $9,081.31, as the rental value from the commencement of the action to date. A motion to amend the complaint to conform with the verdict rendered was denied. From the judgment entered in accordance with the direction of the court, the defendants Kling and Husted appeal.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

Abram Kling, for appellants.
Clarence L. Barber, for respondent.

O'BRIEN, J. The defendants made out no title or claim to the premises which was superior to or affected the plaintiff's legal title or right to possession. The plaintiff's rights were obtained under the judgment in the suit of People v. Rebecca Weisel, and the sale thereunder by the sheriff, who upon such sale issued his certificate, which was subsequently transferred to the plaintiff; and the plaintiff thereafter obtained the deed from the sheriff. After such sale all that remained in Mrs. Weisel was an equity of redemption, and to this, undoubtedly, the defendants succeeded under the sale by the receiver pursuant to the subsequent judgment against Mrs. Weisel; but the failure to redeem from the first sale by the sheriff within the time allowed by law resulted in the plaintiff's rights ripening into a good title. There are presented upon this record, however, three questions which require discussion. These are whether the order denying the plaintiff's motion to set aside the sale made by the receiver Wyatt is res judicata, whether there was error in the rulings excluding evidence offered by the defendants, and whether damages for withholding possession, not having been pleaded, could have been allowed against the defendant Kling and against the receiver Husted personally.

The first question is to be determined from the general principles to be applied where there is an estoppel by record. The motion referred to was made after the receiver's sale without the presence in court of the purchaser, the defendant Kling, his grantee, or the receiver; and the court, therefore, had no jurisdiction over these parties, to bind them. An estoppel by record must be reciprocal, and, if one party is not bound by the adjudication, then neither is the other party bound. As said in Shipman v. Rollins, 98 N. Y. 330, "To act as an estoppel, the judgment must be reciprocal and binding upon both parties." We think, therefore, as neither the defendant Kling nor the receiver was bound by the order, it is not an adjudication in their favor as against the plaintiff.

The evidence excluded relates to statements and declarations made at different times by both Smith and the plaintiff in reference to their title to the property. Such evidence was offered, no doubt, for the purpose of establishing the allegation in the answer that the plaintiff's deed was obtained by him as the result of a conspiracy, and that

he in fact held the property in the interest of Joseph Weisel and Rebecca Weisel. Without determining whether the allegations of the answer, which reads more like a conclusion of law than a statement of fact, sufficiently raised the question of fraud and conspiracy, we will briefly examine the character of the witnesses who were asked to testify, and the bearing of their testimony upon the parties to and the issues in this action. In order to show the declarations made by Smith, we have first the testimony of Golden, who said he was an attorney, and after 1897 acted as such for Smith, and that he had a conversation with him on the day he purchased the property in 1894. The other witness as to Smith's declarations was a lawyer and notary of the same name, who took his acknowledgement in 1894, and from whom it was sought to elicit what was said on that occasion. Apart from the question (which it is unnecessary to determine) whether the testimony of these witnesses might be viewed as communications between attorney and client, and therefore privileged, under section 835 of the Code of Civil Procedure, we think that such testimony, even if obtained from competent witnesses, was neither binding nor relevant upon the plaintiff's title, nor did it in any way strengthen the defendant. As applied to real property, the cases are numerous in which it has been held that the declarations of a former owner are not evidence against a subsequent transferee. Truax v. Slater, 86 N. Y. 630; Clews v. Kehr, 90 N. Y. 633; Bush v. Roberts, 111 N. Y. 278, 18 N. E. 732; Petrie v. Williams, 68 Hun, 598; Scofield v. Spaulding, 54 Hun, 531; Tabor v. Van Tassel, 86 N. Y. 642. It must be remembered, moreover, that Smith had transferred the title to Chaim Weisel, and it was from the latter that the plaintiff took title; and therefore whatever defect there might have been in Smith's title would not affect that obtained by the plaintiff from Weisel, if such second transfer in itself was good. As to the admissions against interest which it was sought to prove against the plaintiff, defendants offered the testimony of a lawyer named Reass, who had stated that in 1897 he acted "nominally" for the plaintiff; and by this he meant, as he subsequently explained, that he acted for him without being paid. Clearly the testimony of this witness was objectionable, under section 835 of the Code of Civil Procedure. And as to Fox, the liquor dealer, who was prevented from relating a conversation in 1897 with the plaintiff upon the subject of his interest in the property, many reasons might be suggested against its admissibility. Although such declarations might be available to a creditor of the Weisels in a direct action to set aside a deed for fraud, we fail to see that they were in any way admissible under the issues raised by the pleadings. The defendant Kling was not defending as a creditor, but as a purchaser at a judicial sale, or through such a sale. If we assume further, for the purpose of argument, that the allegation of the answer as to a conspiracy was sufficient, the proof of the conspiracy was wanting. The attempt to prove an overt act in the alleged conspiracy by declarations of the plaintiff was improper. The defendants' purpose, no doubt, was to show that the plaintiff had stated that he held the title for the Weisels, and in this way establish a resulting trust in their favor. Such a trust, however,

as we have stated, can only be proved in favor of creditors, which the defendants were not, or by the party who in his own behalf seeks to establish such a trust. And should we regard the defendant Kling as subrogated to the rights of a creditor, through the receiver, it would not give him a status sufficient to enforce such a trust. Underwood v. Sutcliffe, 77 N. Y. 58. To creditors, moreover, a resulting trust is available only to the "extent necessary to satisfy their just demands" (Laws 1896, c. 547, § 74); and as to the Wright judgment, under which the defendant Kling claims, there was no allegation nor proof that the whole or any part thereof remains unpaid. We must, in this discussion, keep in mind the fact that the plaintiff's rights are not solely dependent on the sheriff's deed, which the answer alleges was obtained by fraud and conspiracy. This deed was given pursuant to the rights acquired under the certificate of sale, which latter is not directly assailed by the answer. In favor of Kling, therefore, upon the failure to prove fraud or fraudulent conspiracy, not alone the declarations of Smith, but also of the plaintiff, were incompetent and inadmissible as affecting plaintiff's title, under the issues raised by the pleadings.

The third question presented is more serious to the plaintiff. Damages were awarded against the receiver personally for rents he had collected, and against the defendant Kling for "rental value," although such damages were not demanded in the complaint, which merely asked specifically for $700, "as the value of the use and occupation,"—the sum named elsewhere in the complaint as having been collected as rent by the receiver. The award of damages against Husted personally cannot be sustained, for the reason that the action was brought against him as receiver, and not individually, and it has been distinctly held that, in an action against a party in a representative capacity, no personal judgment may be obtained. Hone v. De Peyster, 106 N. Y. 645, 13 N. E. 778; Fowler v. Westervelt, 40 Barb. 374. And in this state a receiver who in good faith, under directions of the court, pays out a fund, is protected in such payment, and is not required to refund the same. In re Home Provident Safety-Fund Ass'n, 129 N. Y. 288, 29 N. E. 323; Decker v. Gardner, 124 N. Y. 334, 26 N. E. 814, 11 L. R. A. 480. It was shown upon the trial by the order confirming the sale by Husted as receiver that, of the rents collected, he had, after paying expenses, paid the balance under the order of the court to the attorney for the defendant in the creditor's action in which he was appointed. Having thus made his report as such receiver, and the same having been duly confirmed and allowed, we can find no ground upon which he is liable either personally or as receiver. As against the defendant Kling no special damages greater than $700 were demanded in the complaint. The Code of Civil Procedure provides in section 1496 that, "in an action to recover real property or the possession thereof, the plaintiff may demand in his complaint and in a proper case recover damages for withholding the property"; and, as stated in the following section (section 1497), "These damages include the rents and profits or the value of the use and occupation of the property where they can legally be recovered by the plaintiff." The evident intention is that such

damages, to be recovered, must be alleged, as also appears from section 484 of the Code of Civil Procedure, wherein it is provided that a plaintiff may unite in an action of ejectment two or more causes of action, "with or without damages for the withholding thereof." Undoubtedly the object of these provisions is to apprise the defendant, so that in case damages are claimed he may offer evidence of set-off or counterclaim by way of payments for taxes, repairs, or the like; and section 1531 of the Code of Civil Procedure provides for a deduction for moneys expended in permanent improvements. On the other hand, the provisions of the Code relied upon by the plaintiff, to the effect that a harmless variance between the pleading and the proof shall be disregarded, are inapplicable, since the natural result here would be to mislead the defendants as to the proof required, and prevent them getting credit for payments made out of the rents for the benefit of the property. We are further referred by the plaintiff to Earle v. Manufacturing Co., 2 App. Div. 460, 37 N. Y. Supp. 1037, wherein it was said:

"To sustain a just recovery of damages in excess of a lesser amount inadvertently demanded in the complaint, the court, on appeal, may direct an amendment."

That case, however, and Schultz v. Railroad Co., 89 N. Y. 242, similarly holding, are inapplicable here, for the difference in amount is very great; the complaint alleging merely $700 "as the value of the use and occupation," with no mention of rents or profits, and the sum allowed against defendant Kling for "rental value" being $9,081.31.

The case of Clason v. Baldwin, also relied upon by the plaintiff, was twice before the court of appeals,—the first time in 129 N. Y. 183, 190, 29 N. E. 226, wherein it was said:

"The commencement of the action, with the demand in the complaint for damages for the withholding of the possession, was sufficient to apprise the defendant to prepare to meet the plaintiff's proofs as to all the damages which the withholding comprehended in fact."

And on the second appeal (152 N. Y. 204, 46 N. E. 322) an award for damages or mesne profits in excess of that demanded in the complaint by $337 was upheld upon the ground that, the objection not having been made at the trial, it was too late to raise the question upon appeal in that court. In the case at bar, however, no such demand for damages as allowed was made, and the right to recover such damages was distinctly objected to upon the trial, so that the case of Clason v. Baldwin is no authority for the allowance of damages such as were awarded and included in the verdict directed by the court. It appears, moreover, that on the trial, as well as after the direction of the verdict, the plaintiff moved to amend the prayer of the complaint, and the motion was denied upon the objection of defendant, based on the ground of surprise. We think it was error to award any damages against the defendant Kling, as none were demanded in the complaint against him.

Our conclusion upon the whole case, therefore, is that the judgment should be modified by striking out damages as against the defendants Husted and Kling, and as so modified affirmed, without costs. All concur.